## COOK *v.* LILLO.

1. *Thorington* v. *Smith* (8 Wall. 1) cited and approved.
2. Payment of a promissory note, executed at New Orleans March 26, 1862, will be enforced in lawful money where payments on account of the principal and interest were in that medium, and where, before the commencement of the suit, no claim was made that, by the agreement or understanding of the parties, the term "dollars" was to be construed as meaning "Confederate dollars."
3. In Louisiana, usurious interest cannot be reclaimed, nor imputed to the principal, unless a suit for its recovery be commenced or a plea of usury be set up within twelve months after the payment thereof.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. Charles B. Singleton, Mr. Richard H. Browne,* and *Mr. John A. Campbell* for the appellant.

*Mr. C. E. Schmidt* and *Mr. Thomas J. Semmes, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

It has long been settled in this court that transactions in Confederate money during the late civil war between the inhabitants of the Confederate States within the Confederate lines, not intended to promote the ends of the Confederate government, could be enforced in the courts of the United States, after the restoration of peace, to the extent of their just obligation. It is equally well settled that if a contract entered into under such circumstances, payable in dollars, was, according to the understanding of the parties, to be paid in Confederate dollars, upon proof of that fact the party entitled to the payment

can only recover the value of Confederate dollars in the lawful money of the United States. *Thorington* v. *Smith*, 8 Wall. 1.

The loan for which the notes sued on in this case were given was made by a check on one of the New Orleans banks. The business of the banks was at that time done in Confederate currency. That kind of money was received and paid out in ordinary transactions, but the evidence fails entirely to satisfy us that the dollars called for in the notes were, by the agreement or understanding of the parties, Confederate dollars. Cook owed a debt of $10,000, payable in lawful money of the United States, and bearing interest at the rate of ten per cent per annum. He borrowed of the Sonlies $10,000 at a reduced rate of interest to pay that debt. It is fair to presume from the evidence that the dollars he borrowed paid the dollars he owed. He says himself his only object in the transaction was to carry his debt at less interest. It is nowhere intimated that the dollars he expected to pay on his loan were other or different from those he owed on his old debt. Not long after the notes were given, New Orleans was taken possession of by the military forces of the United States, and was never afterwards within the Confederate lines. Payments to a large amount both of principal and interest have been made, and always in lawful money or its equivalent. So far as we can discover from the evidence, no claim was ever made that the notes called for Confederate dollars until about the time of the commencement of this suit, which was fifteen years after the notes were given, and after thousands of dollars had been paid and many extensions of time secured. The court below was clearly right, therefore, in rendering a decree without any deduction for the depreciated value of Confederate dollars.

It is not denied that Lillo, the complainant below, was an alien when the suit was begun. He could, therefore, sue in the courts of the United States. He is the holder of the notes sued on, and there is nothing in the evidence to show that he has not the right to maintain this action. The notes in his hands are subject to the same defences they would be in the hands of the Sonlies, because, confessedly, they were transferred to him long after they had become due.

By a statute of Louisiana, if a person pays on a contract a

higher rate of interest than eight per cent, it may be sued for and recovered back within twelve months from the time of the payment. Rev. Stat. 1870, sect. 1855. Before this statute, which was first enacted in 1844, it had been decided by the highest court of the State in several cases that money paid for usurious interest could not be reclaimed or imputed to the capital. *Perillat* v. *Puech*, 2 Mart. (La.) N. S. 672; *Millaudon* v. *Arnous*, 3 id. 596; *Poydras* v. *Turgeau*, 14 id. 87; *Merchants' Bank* v. *Gove*, 15 id. 378; *Cox* v. *Rowley*, 12 Rob. (La.) 273. Since the statute it has been held that a reclamation cannot be made, or the usurious interest imputed to the principal, unless the suit for the recovery is begun, or plea of usury set up to the claim within twelve months after the payment is made. *Cox* v. *McIntyre*, 6 La. Ann. 470; *Weaver* v. *Maillot*, 15 id. 395. In view of these decisions the appellant was not entitled to any credit on the principal of his debt by reason of usurious interest paid, because his last payment of interest was made in March, 1875, and this suit was not begun until Jan. 11, 1877, more than twelve months afterwards.

This disposes of all the errors assigned.

*Decree affirmed.*