Mr. Justice Hagner
delivered the opinion of the Court:
The first ground upon which the complainants insist the deeds of trust should be set aside, is that when they applied to the defendant company for the first loan, Mrs. Kleindienst asked Callan, its treasurer, for a copy of the constitution of the association; whereupon Callan informed her that the supply was exhausted, but gave her a copy of the constitution of the Washington Co-operative Building and Deposit Association, the provisions of which, he said, were substantially the same as those of the defendant association; and the complainants assert they believed this representation to be true until recently, but have now learned to the contrary. The intimation is that the agent of the defendant association deceived the complainants into agreeing to come under relations with them, by representing its charter as more favorable for stockholders than it really was. This may be considered as a charge of deceit and fraud, and if sustained, might entitle the complainants to *365 relief from a contract thus fraudulently imposed upon them. The only proof on the subject is that of the complainant Mary, and if this were admissible, it is met by the positive denial on the part of Callan. He declares no such representation was ever made by him to Mrs. Kleindienst; that he was not the custodian of the copies of the constitution, and there was no difficulty in obtaining one from Need, the secretary, whose business it was to keep them. The charge would be without any significance, unless it also appeared that the provisions of the defendant’s charter were less favorable than those of the other association. But a comparison of the two discloses that in almost every particular the charter of the defendant association is the most favorable, and hence there could have been no injury to the complainants by the substitution of the one for the other, if it had taken place.
It appears, too, that the complainant had' been associated with at least one building association before he became connected with the defendant association, and the loan of $3,000 was obtained by him to pay that association a debt which must have been standing for some time. Twice he obtained loans from the defendant association, and one ground of complaint in the bill is that on a third occasion, when he applied to borrow money he was refused on insufficient grounds. That he should have remained from 1875 until 1885 in ignorance of the scheme of these societies, with which he seems to have been so extensively engaged, seems at least improbable.
Second. It is insisted the deed of trust of 1875, conveying the property standing in the name of Mrs. Kleindienst, is void, because it was executed to secure a bond signed by the husband and wife to pay the instalments required at the time of making the loan of $3,000. It is argued that Mrs. Kleindienst, as a married woman, was not competent to sign a bond; that the bond being void -as to her, was void m toto; and the bond being void, the deed of trust could be of no force. We conceive this contention to be *366 quite unfounded. In Bacon’s Abridgement, “ Obligation,” (D) the law is thus stated:
“But if an infant, feme covert,■ monk, &c., who are disabled by law to contract and bind themselves in bonds, enter together with a stranger, who is under none of these disabilities, into an obligation, it shall bind the stranger, though it be void as to the infant.”
The signature of a bond by a feme covert is analagous to the signature by an infant; and there is no doubt that although the bond would be void as to the infant, yet a party jointly executing it with the infant remains bound.
So, where the bond is executed by one obligor under duress, it remains good as to the other party who signed it under no such duress. In 2 Greenleaf’s Ev., Sec. 302, the law is thus stated: “ But in all cases the duress must affect the party himself; for if there be two obligors, one of whom executed the bond bj' duress, the other cannot take advantage of this to avoid the bond as to himself.” Spalding vs. Crawford, 27 Tex., 159, is a case directly sustaining the text.
The bond, then, though void as to the wife, was valid as to the husband; and being his debt, the wife had the power to secure its payment by a conveyance with her husband, of her real estate. Stephens vs. Beall, 22 Wall., 337.
This is not like the case of a deed executed to secure a note of the wife alone, which, of course, would be a totally void obligation, like a note given for an immoral or illegal purpose. • ‘ .
Third. The remaining defense is based upon the ground of usury. It is insisted the scheme of lending provided by the articles of association an d actually carried out in the case before us, contemplates an usurious loan of money, and the return of the loan itself with the usury. This defense has repeatedly been in numerous cases brought before this court, where borrowers from such associations have endeavored to get clear of the oner ous obligations they have incurred. The charters of these various associations seems *367 studiously to differ from each other in. some particulars; but they all appear to be based upon the same theory which has been stated substantially thus: The members of such an association from time to time pay in their monthly dues as required by the terms' of the charter. The association also makes profits from loans it may have made since it began op'erations, and thus at a certain time it will have a sum of money on hand which it is willing to lend out. An individual then joining it for the first time, applies for a loan of a portion of these accumulations. By becoming a member and punctually making the payments incident to his membership, he wmuld, at the winding up of the association, be entitled to share in its accumulations and receive a sum in excess of all his payments. Thus holding a certain interest in the ultimate succes of the association, conditioned upon his fulfillment of the duties of membership, if, instead of waiting for the realization of his profits upon the final settlement, he desires to anticipate that contemplated result, by obtaining from the society in advance an amount bearing a certain proportion to his interest, the requirements of strict mutuality would require him to pay to the society an amount of money, premium or bonus, not only commensurate with the advantages he may derive from the accommodation, but also in the nature of a contribution to the common treasury to indemnify those who competed with him for the loan, but failed to obtain it. The propriety of imposing this premium has been defended upon the ground that the ■ association is after all in the nature of a co-partnership; and Endlich, in his work on Building Associations, Chapter 20, Sec. 517, says that an unincorporated association (like the present) is nothing more nor less than a co-partnership.
Whether the scheme of such association is a beneficial one to all the parties who embark in it, may well be questioned. To those who simply pay their dues, borrow nothing from the association, and await in silence the winding *368 up of the affair, it. doubtless would prove profitable, provided the affairs had been honestly managed. And to 'those who borrow and pay their loans, it may, perhaps, be beneficial; but to those who borrow and fail to pay, the result must always be disastrous.
The principal decisions which have been referred .to in this argument were cited in most of the cases in which this court has sustained the right of the building associations to exact a compliance with the contracts. But it is insisted by the complainants that the scheme of the defendant’s assocition differs in vital respects from those of the association in the cases referred to. It is not necessary to go into a consideration of this contention, as we think a point presented by the defendant, which we shall now consider, is fatal to the claim of the complainants in this suit.
It appears that all the alleged payments of usurious interest were made by the complainants more than twelve months (the greater part of several years) before the filing of this bill; and it is insisted that under the authority of cases in the Supreme Court of the United States and of this court, the complainants cannot be allowed to avail themselves of the defense of usury in the present proceeding. Sections 713 and 714 of the Revised Statutes fix the rate of interest in the District of Columbia, and Section 715 declares that one contracting for a higher rate shall forfeit the whole of the interest. Section 716 provides that if any person or corporation within the District shall receive any greater amount than the rate of interest so provided by law, it shall be lawful for the person paying the same to sue for and recover all the interest paid upon such contract or agreement from the person receiving such unlawful interest, “ but the suit to recover back such interest shall be brought within one year after such unlawful interest shall home been paid or taken.”
The Supreme Court, in Barnett vs. National Bank, 98 US., 555, and Drysback vs. National Bank, 104 U. S., 52, de *369 cidéd that under a similar statutory provision applicable to the national banks, it was not competent for the borrower, after the expiration of the ^time limited in the statute for bringing the action, to reduce the claim of the bank by crediting the excess of interest as against the principal. In Cook vs. Lillo, 103 U. S., 792, the Supreme Court made a similar decision with reference to a statute of the State of Louisiana, which provided that if a person pays on a contract a higher rate of interest than the 8 per cent, authorized by the law of the State, the money paid for usurious interest may be sued for and recovered back .within twelve months of the time of payment. It had been held by the court in Louisiana that a reclamation could not be made under the statute, nor the usurious interest be imputed to the principal, unless the suit for the recovery was begun, or the plea of usury set up to the claim, within twelve months after the payment was made. The Supreme Court, following these rulings, held that in a suit brought to recover a balance upon notes, the debtor was not entitled to any credit on the principal of his debt by reason of usurious interest paid, where his last payment was made more than twelve months before the suit was begun.
In Walsh vs. Mayer, 111 U. S., 31, the same statute was examined. There the maker of a note and mortgage, in his answer to a bill brought for the sale of the mortgaged property, claimed to credit upon the principal of his debt the usurious excess over the legal interest. But it appearing he had made all these payments to the lender more than a year before the commencement of the suit, the Supreme Court again held the statute conferred no authority to apply the usurious interest to the reduction of the principal, and that the exclusive remedy w^as ah action brought within twelve months for the recovery of the money so paid.
In Carter vs. Carusi, 112 U. S., 478, the same ruling was made by the Supreme Court with reference to the statute of the District of Columbia, before referred to, affirming the *370 ruling of this court. Mr. Justice Woods, after restating generally the law as laid down in the foregoing cases, says: “ The counsel for the plaintiffs sin error contend that if he is not entitled to relief under the statute, his common law right to reclaim or set off usurious interest paid still remains to him. But this court has repeatedly decided against this contention of the plaintiff in error.” In the case last cited (that of Walsh vs. Mayer), it was held generally that a statute which prescribes a legal rate of interest and forbids the taking of a higher rate, under penalty of a forfeiture of the entire interest, and declares that the party paying such higher rate of interest may recover it back by suit brought within twelve months, confers no authority to apply the usurious interest actually paid to the discharge of the principal debt, and that 'a suit for its recovery, brought within twelve months, was the exclusive remedy.
The same construction was put upon the District statute, in the case of Eastwood vs. Kennedy, 44 Maryland, 564, where a defendant attempted to set off against the principal debt the excess of usurious interest he claimed to have paid more than twelve months before the bringing of the action. All these were cases where. the party relying upon the defense of usury was a defendant resisting the suit of the holder to enforce the collection of his claim, and therefore occupying a more favorable position than that of the complainants here, who are asking for affirmative relief.
It seems clear to us the complainants can have no relief upon this last ground.
The “ Schedule A,” prepared by the auditor, is more beneficial to the complainant thau a statement would be, based upon either the ninth or tenth sections of the charter of the association. We think it makes all the allowance the complainants are entitled to, and we decide that the decree below directing the payment of the balance shown by that schedule, with interest, shall in all things be affirmed.