No. 12,695.

J. F. WHITE ET ALS. VS. W. L. WHITE, ADMINISTRATOR.

An action by heirs for the recovery from the succession of their father the amount of their interests in the succession of their predeceased mother is not a personal action prescriptible by ten years, but one for an entire succession, which is prescriptible by thirty years.

Contracts made during the late war in one of the Confederate States, payable in Confederate money, will be enforced in the Supreme Court, when the value of same, as compared with lawful money of the United States at the time and place of contract is ascertained by proof.

An executory contract, made in 1862 in Louisiana, for the future delivery of cotton to the Confederate States government, for and in consideration of Confederate States bonds, to be furnished thereafter, does not evidence a complete sale; only a promise of sale which entitled the promissee to sue for a specific performance, or damages for the non-fulfilment of the contract.

APPEAL from the Third Judicial District Court for the Parish of Claiborne. *Barksdale, J.*

McClendon & Seals for Plaintiffs, Appellees.

J. W. Holbert and J. E. Moore for Defendant and Appellant.

Argued and submitted January 12, 1898.
Opinion handed down January 24, 1898.

The opinion of the court was delivered by

WATKINS, J. Alleging themselves to be three of the five children of the marriage of William White and Sophie White, and that the latter died in 1864, and the former in 1895, the petitioners seek to recover a judgment against the succession of their father for the value of three-fifths of their mother's one-half of the community property as it existed at her death and the consequent dissolution of the matrimonial community—their father having lost his right of usufruct in July, 1865, when he married his second wife.

They aver that there was at the time of their mother's death personal property and effects of various kind on hand, and which subsequently remained in their father's possession, of the value of thirteen thousand seven hundred and seventy-one dollars—an itemized

list and valuation of which is annexed to their petition—and for one-half of which sum they pray judgment " for the use and benefit of the heirs," etc., alleging that same had been by their father appropriated to and used in the community with his second wife.

They further aver that W. L. White, as administrator of the succession of William White, their father, is administering the estate of the second community; and that the aforesaid indebtedness is that of the said second community to the first community, and that they are entitled to have same paid from the assets of the second community by preference over any other debts thereof—praying for judgment accordingly.

The answer of the administrator is a general denial, coupled with a special denial, to the effect that William White, deceased, owned the property described in plaintiff's petition, or that, if he was not the owner thereof, that he had used the same for the benefit of the second community. In an amended answer defendant shows that William White paid plaintiffs and other heirs in full the amounts coming to them from their mother's community interest, and for which sums he took their respective receipts—that is to say, from J. F. White a receipt for the sums of seven hundred and thirty-nine dollars and five hundred and twenty-four dollars; from Z. T. White a like receipt for six hundred and sixty-six dollars and two hundred and ninety-five dollars, and from Philan White a like receipt for six hundred and sixty-six dollars and four hundred and seven dollars.

He further represents that those amounts exceed the respective virile shares of the plaintiffs in their mother's succession, or one-half interest in said first community; and that, in addition thereto, two of the plaintiffs are indebted to the succession of their father the amounts of some small notes, which are annexed to and made parts of his answer.

Plaintiffs filed a supplemental petition and alleged that their father acquired, during the existence of the first community, a tract of land upon which he erected buildings and improvements and cleared and laid off a farm; and that he subsequently used, occupied and cultivated same, during the period of his life, for the benefit of the second community, for which same is indebted in the way of rent at the rate of one-half of two hundred and fifty dollars per annum—that is to say, to the amount of seventy-five dollars per annum for their shares of three-fifths of one-half thereof.

They also claim five per cent. per annum interest on each annual instalment of said rent, from the date of their father's second marriage in 1865.

To this amended petition the answer of the defendant is a general denial, coupled with the averment that " the plaintiffs have been more than paid for their shares in their mother's succession, and that they had no interest in the land for the use of which they make claim," etc.

At this stage of the proceedings the defendant filed a plea of no cause of action, as a peremptory exception founded on the law; but there appears to have been no formal disposition made of same, as the court proceeded with the trial and rendered a judgment in favor of the plaintiffs—thereby affirming that there was a cause of action.

The defendant also filed a plea of prescription of three years against the plaintiff's demand for rents.

The trial resulted in a judgment in favor of each one of the three plaintiffs and against the administrator of the succession of William White, for their respective interests in the estate of their mother; that is to say, for the sum of seven hundred and one dollars each—that is, two thousand one hundred and three dollars in all, with legal interest from the first of September, 1865.

And in a judgment for the further sum of three hundred and sixty-seven dollars and fifty cents on the plaintiff's claim for rent, with legal interest from January 4, 1897.

It further ordered that the plaintiffs be charged with sundry amounts which are particularly specified, and that same be awarded to the defendants on their reconventional demand.

From that judgment the administrator has appealed.

In this court counsel for plaintiffs and appellees filed an answer to the appeal and prayed for an amendment of the judgment in their favor, so as to award them the full amount claimed; and they also filed contemporaneously a plea of five and ten years prescription against the defendants' reconventional demand.

And in this court also appears the counsel for the administrator, who filed a plea of prescription of ten and thirty years in bar of plaintiffs' demands.

As neither party has requested that the cause be remanded for the purpose of rebutting the aforesaid pleas which were filed in this

court, it is fair to assume that they rest their respective contentions upon the face of the record before us.

In the first place, we think it appears clearly from the language of the judgment, that all the plaintiff's demand for rent was barred, with the exception of the amount due for the last three years; and in thus decreeing we think the lower judge was right.

We are of opinion that the plaintiffs' plea of five and ten years' prescription against the defendant's reconventional demand is not good, because his claim is, that the sum specified evidenced payments made to them in the course of a settlement between them and their father; of their interests in their mother's succession. The claim is urged as an offset against the plaintiffs' demand; and not as a reconventional demand, properly speaking, for which he claims judgment.

The petition in this suit was filed on the 28th of May, 1896, and it is therefore evident, that the plea of prescription of thirty years bars the action inasmuch as plaintiffs' right of action arose in July, 1865, the date of the second marriage of the deceased father, provided they were of full age at the time. But of their majority the proof does not satisfy us. It is at least doubtful as to one, and clearly shows the majority of the other two.

This is admitted by defendants' counsel, at least inferentially.

To sustain a plea of prescription the proof must be clear. The plea of ten years is directed against this suit as a purely personal action. R. C. C. 3544.

This is not a suit against an usufructuary for an accounting; but one for the recovery of an entire succession, and is only barred by the lapse of thirty years. R. C. C. 3548.

The proof administered at the trial fairly supports the judgment rendered. It satisfies us that the properties were fairly estimated in the opinion of the district judge; and that same were on hand in kind, at the date of the second marriage of plaintiff's father, and were subsequently disposed of by him. Necessarily he incurred an obligation to reimburse the heirs of his deceased wife the value thereof, less the amount he paid them on account.

An agreement to sell cotton to the Confederate government during the existence of the late war, to be paid for in bonds of the Confederate States, and unaccompanied with delivery of possession, did not operate a divestiture of title. Boyd vs. Chaffe, 21 An. 476;

Schmidt vs. Barker, 17 An. 262; Howard vs. Kirwin, 19 An. 432; Huck vs. Haller, 19 An. 257; Levy vs. Baer, 19 An. 469; Biossat vs. Sullivan, 21 An. 565.

In this last case, the court expressed the following view, viz.:

"If full effect be given to the testimony of the witnesses for defendant, and the evidence of the plaintiff be disregarded, it would only prove an agreement to sell an executory contract, and the consideration was Confederate treasury notes. It is well settled that this court will not aid parties to enforce a contract which had Confederate money for a consideration."

In the United States Supreme Court, a different rule of interpreting contracts predicated on Confederate treasury notes has obtained, the purport of which is, that contracts made during the war in one of the Confederate States, payable in Confederate money, will be enforced in the Federal Courts, when the value of such Confederate notes as compared with lawful money of the United States, at the time and place of the contract, is ascertained by proof. Railroad Company vs. King, 91 U. S. 3; Stewart vs. Solomon, 9 U. S. 434; Cook vs. Lillo, 103 U. S. 792; Rives vs. Duke, 105 U. S. 132; Effinger vs. Kenney, 115 U. S. 566.

The theory upon which these decisions proceed is that Confederate treasury notes constituted a currency which was imposed upon a community by irresistible force; and that same must be considered in courts of law as though it had been issued by a foreign government temporarily occupying a part of the territory of the United States. Thorneyton vs. Smith, 8 Wallace, 1.

But in this case no such proof was administered. If it had been it would not have been availing to the defendant for the reason that the price which the witnesses testify they *contracted* to pay William White for the cotton in 1862 was not Confederate treasury notes, but Confederate bonds—an altogether different thing.

They were not at the time *in esse*. They were to have been delivered to White at a future date, and he retained possession of the cotton and sold it in 1865 after the close of the war.

At most the engagement evidenced an executory contract or agreement for the future delivery of cotton to the Confederate government—a mere promise of sale which did not convey a title.

Such a transaction does not constitute a complete sale; only a promise of sale which entitled the promisee to sue either for a specific

State ex rel. McLeod & Co. vs. Judge.

performance or the recovery of damages. Collins vs. Desmaret, 45 An. 108; Satterfield vs. Keller, 14 An. 615; Garret vs. Crooks, 15 An. 483; Knox vs. Payne, 13 An. 361; Broadwell vs. Raines, 34 An. 677; Thompson vs. Sheriff, 40 An. 712.

The alleged sale of the cotton by White to the Confederate government is not sustained by either law or evidence.

Judgment affirmed.