O’NIELL, Chief Justice
 

 (dissenting).
 

 My opinion is that the judgment appealed from is correct.
 

 Oakley B. Harris died in New Orleans, where he had his residence and domicile, leaving an estate then valued at $426,533.27, but now worth very much less. He was survived by his mother, Mrs. Susie Jackson Harris,
 
 *975
 
 who resided in Oourtland, Ala., and by five brothers and sisters, and two nephews, the children of a deceased sister. 1-Ie left a will, in which he gave special legacies to two of his brothers and to three outsiders (one of whom has renounced the legacy), and gave the entire residue of his estate to ten nephews and nieces, including the two nephews who, because of their mother’s death, were among his collateral heirs. Oakley B. Harris was shot to death, and, while he lay dying, he dictated and signed a will, in which he bequeathed $50,000 to Miss Jessie McBride (who is now Mrs. Maceo), and $150 a month to Edna Slate, and the residue of his estate to his mother. That will, however, was invalid for want of legal form, because, although it was signed by the testator, it was not written by him, but was written by an attending physician. The previous will, therefore, in which the mother of the testator and Miss Jessie McBride were not mentioned, was the only valid will of Oakley B. Harris, and was probated as such, the Hibernia Bank & Trust Company taking possession and administering the estate as the executor named in the will. The will which the testator had made when he was mortally wounded was filed in the record, but was not offered for probate, because it was plainly invalid for want of form.
 

 The mother of Oakley B. Harris was his heir at law for a fourth of his estate (Rev. Civ. Code, arts. 903, 911), and, being a forced heir, she had the right to demand a reduction of the dispositions of his will to the disposable portion, three-fourths, of his estate. Succession of Greenlaw, 148 La. 255, 86 So. 786; Rev. Civ. Code, art. 1502. She- desired, however, to carry out the wish of her son to leave $50,000 to Miss Jessie McBride. She, therefore, made a codicil to her will, in which she declared that there was a natural obligation on her part, to the extent of one-fourth, and on the part of the residuary, legatees (her nephews and nieces) named in the valid will of Oakley B. Harris, to the extent of three-fourths of the obligation, to allow the legacy of $50,000 to be paid to Miss Jessie McBride — notwithstanding the disposition was invalid for want of form. Prom the wording of the codicil which Mrs. Susie Jackson Harris made to her will, it appears that she had in mind the fourth paragraph of article 1758 of the Civil Code, which puts the “natural obligation” of an heir — either legal or testamentary — to carry out the donations or other dispositions of the deceased, “which are defective for want of form only,” in the same class with the “natural obligation” to pay a debt that is prescribed, viz.:
 

 “4. There is also a natural obligation on those who inherit an estate, either under a will or by legal inheritance, to execute the donations or other dispositions which the former owner had made, but which are defective for want of form only.”
 

 The mother of Oakley B. Harris, in the codicil of her will, undertook to assume the obligation to pay to Miss Jessie McBride the whole legacy of $50,000, out of the fourth interest in the estate, inherited by the mother of Oakley B. Harris, if the residuary legatees of Oakley B. Harris declined to pay three-fourths of the $50,000. She stipulated, therefore, in the codicil of Her will, that the residuary legatees of the estate of Oakley B. Harris should pay three-fourths of the $50,000 to
 
 *977
 
 Miss Jessie McBride, and that, if they failed so to do, the share of any one of them so failing or refusing should be deducted from his or her inheritance from the succession of the mother of Oakley B. Harris, or from the inheritance of the parent of the grandchild refusing to contribute to the payment of the $50,000.
 

 A year and nine months after the death of Oakley B. Harris, and while his succession was being administered by the executor in New Orleans, his mother died, at her residence, in Alabama. Meanwhile, she had appointed one of her sons as her agent and attorney in fact, to look after her interest in the succession of her deceased son, in Louisiana. She had not sued, however, to reduce the dispositions of the will of Oakley B. Harris to the disposable portion, three-fourths-of the estate. It is conceded, of course, that the mother of Oakley B. Harris was his forced heir, for a fourth of his estate, and, therefore, that she had the right to demand a reduction of the dispositions of his will to the disposable portion. If that were not true there would be no such lawsuit as we have now. But it cannot be said that the justness of the claim of the mother of Oakley B. Harris placed it in the same class as if it had been reduced to —or converted into — possession of a fourth of the estate of Oakley B. Harris.
 

 The heirs at law of the mother of Oakley B. Harris are his five brothers and sisters and the two nephews, the children of his deceased sister. If the estate of Mrs. Harris should be distributed according to the inheritance laws of Louisiana, her heirs, being her sons and daughters and grandsons, are her forced heirs, to the extent of two-thirds of her estate. Hence they claim the right to reduce the legacy of $50,000 to Miss Jessie McBride, in the codicil of the will of the mother of Oakley B. Harris, in so far as the legacy may exceed one-third of Mrs. Harris’ légitime of one-fourth of the estate of Oakley B. Harris. On the other hand, if the right of action of Mrs. Harris, to reduce the dispositions of her son’s will to the disposable portion, was merely a chose in action, having its situs in Alabama, and was therefore transmitted according to the laws of Alabama, the heirs of Mrs. Harris have no right to complain of her having given $50,000 to Mrs. Jessie McBride
 
 Maceo out of the
 
 legitime of one-fourth of the estate of Oakley B. Harris.
 

 I do not see any inconsistency in Mrs. Maceo’s claiming, primarily, that the estate of the mother of Oakley B. Harris should be distributed according to the laws of Alabama, where there are • no forced heirs, and her claiming, in the alternative, that, even if the claim of Mrs. Harris against the legatees named in his will should be dealt with according to the laws of Louisiana, where there are forced heirs, the forced heirs would have no right to complain of Mrs. Harris’ paying the $50,000 in settlement of a natural obligation. The basis of this alternative argument is that article 1759 of the Civil Code declares that, although a natural obligation cannot be enforced by lawsuit, it is a sufficient consideration for a new contract, and no suit will lie to recover what has been given or paid in fulfillment of a natural obligation. From this, and from the fourth paragraph of article 1758 of the Civil Code, there is considerable logic in Mrs. Maceo’s argument that, although she could not have compelled Mrs.
 
 *979
 
 Harris to pay her proportionate share of the natural obligation of the heirs of Oakley B. Harris, to allow the payment of the $50,000 legacy which was invalid only for want of form, neither could the heirs of Mrs. Harris— even if they are her forced heirs — prevent a fulfillment of the natural obligation. If the claim of Mrs. Maceo depended upon this alternative proposition, based upon the theory of the natural obligation recognized by Mrs. Harris, my opinion, very likely, would be that there was no natural obligation on the part of Mrs. Harris beyond her proportionate share, one-fourth, of the $50,000. She could not assume a natural obligation of the residuary legatees of Oakley B. Harris to the prejudice of her forced heirs — -if the claim of the estate of Mrs. Harris in the estate of Oakley B. Harris is subject to the law of forced heirship. I have some doubt, however, whether the fourth paragraph of article 1758 of the Civil Code was intended to be applied to dispositions mortis causa, or only to donations or other dispositions of property made by the ancestor during his lifetime. The grammatical expression in the article leaves some doubt about that. And it need not be considered further by me in this case, because my opinion is that the first proposition advanced by the Alabama executor of the estate of Mrs. Harris, and by Mrs. Jessie McBride Maceo, is well founded; that is, that the estate of Mrs. Susie Jackson Harris, including what she may receive from the succession of Oakley B. Harris, should be administered and distributed according to the laws of Alabama. It seems anomalous to me that the courts of Louisiana should be applying the law of forced heirship to a succession which is being administered and distributed according to the laws of Alabama. If the sons and daughters and grandsons of Mrs. Harris have the right, under the laws of Louisiana, to reduce the $50,000 legacy which Mrs. Harris bequeathed to Mrs. Jessie McBride Maceo to the disposable portion — which under the laws of Louisiana is one-third of the estate of Mrs. Harris — why reduce it to only a third of whatever Mrs. Harris may receive from the succession of her deceased son? If the validity or effect of the codicil of the will of Mrs. Harris, bequeathing $50,000 to Mrs. Jessie McBride Maceo, should be governed by the laws of Louisiana, the disposable portion would be one-third of the estate of Mrs. Harris, and the $50,000 legacy would not be subject to reduction for exceeding a third of only that part of the estate of the testator which she may receive from the succession of her deceased son, in Louisiana.
 

 On this subject it is said in the prevailing opinion rendered in this case, in support of what the opinion holds; “To hold otherwise, would present the legal anomaly of a different order of distribution for the interest of a nonresident forced heir from that of a resident forced heir.” But the difference, which the majority of the members of the court seem to overlook, is not 'between the nonresident and resident forced heir; the difference which should be observed in this case, and in all cases, is between one who claims to be a forced heir to a so-called nonresident succession and one who claims to be a forced heir to a so-called resident succession. The prevailing opinion in this case appears to me to proceed upon the theory that, because the mother of Oakley B. Har
 
 *981
 
 ris was his forced heir for one-fourth of his estate, and because her sons and daughters and grandsons are her forced heirs for two-thirds of her estate, therefore they are the forced heirs of Oakley B. Harris for two-thirds of one-fourth (being one-sixth) of his estate. But that is not so, because there is no forced heirship in the collateral line.
 

 When Mrs. Harris died, she did not, literally, own an interest in the estate of Oakley B. Harris, in Louisiana. She had merely the right of action, accorded to her by article 1502 of the Civil Code, to reduce, to the disposable portion of his estate, the bequests which he had made in his will. The article ’provides:
 

 “Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum.”
 

 Article 940 of the Civil Code provides 'that the rule, by which a succession is acquired by the heir immediately at the delath of the one from whom he inherits, applies also to
 
 testamentary heirs, instituted heirs,
 
 or
 
 universal legatees.
 
 And article S86 declares that it is only when there is no testamentary heir, or instituted heir, or universal legatee, or where the institution of an heir or universal legatee is null or without effect, that the succession goes to the heir at law immediately at the death of the one from whom he inherits, and by mere operation of law.
 

 Therefore, at the death of Oakley B. Harris, his universal legatees — the ten nephews and nieces named in his will — inherited his estate; and all that his mother had was the right of action, which she might or might not have availed herself of at any time within five years, to sue the legátees named in the will of Oakley B. Harris for a reduction of the legacies to three-fourths of his estate. Article 3542 of the Civil Code limits the right of action “for the reduction of excessive donations,” along with other personal rights of action, to the period of five years.
 

 In the prevailing opinion in this case it is held, as I understand, that the right of action which Mrs. Harris had, to demand a reduction of the legacies in the will of Oakley B. Harris, is “considered as immovable”, and as having its situs in Louisiana, on the theory that it is “an action for the recovery of * * * an entire succession”; because article 471 of the Civil Code declares that “an action for the recovery of an immovable estate or an entire succession” is, like the usufruct of an immovable estate, or a servitude on an . immovable estate, “considered as immovable from the object to which they apply.” But article 3548 puts such an action in an entirely different class from “that for the reduction of excessive donations,” by providing that: “All actions for * * * an entire estate, as a succession, are prescribed by thirty years.”
 

 The law on this subject is well settled b3 the decided cases, particularly Miller v. Miller, 105 La. 257, 29 So. 802, 804; Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175; and Jordan v. Filmore, 167 La. 725, 120 So. 275.
 

 In Miller v. Miller, it was said:
 

 “It will be observed that articles 1493-1495 of the Revised Civil Code do not purport to make any change in the ownership of the property of the testator, and simply prohibit him from disposing of it to a certain extent
 
 *983
 
 ‘to the prejudice of heirs’ holding certain relations to the deceased. He is at liberty to dispose of the whole property, subject, however, to the right of these heirs, if they feel themselves aggrieved, to have the will set aside to the extent necessary to secure to them, as forced heirs, the legal portion coming to them. They are at liberty to make this claim only if they think proper to do so. If they do not make the claim, the ownership conveyed 'by the will is maintained. It is often supposed that by the term ‘forced heirs' the law has created a special kind of heirs, separate and distinct from the three kinds of heirs mentioned in article 879 of the Revised Civil CMe, so that that article ■should read: ‘There are four (not three) kinds of heirs, which correspond with four (not three) species of succession, to wit: Testamentary or instituted heirs; legal heirs or heirs of the blood; irregular heirs; forced heirs.’ This is a mistake. What are termed ‘forced heirs’ are nothing more than certain legal heirs 'who by reason of their relationship to the deceased have had i'eserved to them the right to claim, as heirs, if they so elect, a certain proportion of the property of the deceased, and which he may have disposed of ‘to their prejudice.’ Article 1495, in referring to these heirs, simply declares that they are called ‘forced heirs,’ and assigns the reason for their being so called. They are not forcedly made heirs by the law, nor is the action of the deceased in disposing of his entire property forcedly and absolutely null. His action in so doing is only subject to successful attack by these forced legal heirs, under proper conditions and circumstances, when legally claimed and established.”
 

 In Cox v. Von Ahlefeldt, 105 La. 579, 30 So. 175, 213, it was said:
 

 “The rule le mort saisit le vif is thus expressed in the Revised Civil Code: ‘Art. 940. A succession is acquired by the legal heir, who is called by law to the inheritance immediately after the death of the deceased person whom he succeeds. This rule applies also to testamentary heirs, to instituted heirs, and universal legatees, but not to particular legatees.’ It will be observed that the application of this article is not confined to legal heirs, and still less to forced heirs, but that it applies as well to testamentary heirs, other than particular legatees, from which it follows, construing its provisions with those of articles 1502, 1504, and 3542, that the testamentary donation of an entire estate, including the légitime of the forced heir, confers a title upon the donee, which may be reduced pro tanto at the suit of the forced heir, or of his heirs or assigns, provided such suit is brought .within five years.”
 

 I respectfully submit that the decisions cited in the prevailing opinion in this case are not at all appropriate, because in none of them was there a claim to reduce a donation or testamentary bequest to the disposable portion of the estate of the donor or testator.
 

 For example, in Marcenaro v. Mordella, 10 La. Ann. 772, the only question was whether the husband of Anna Bardino Marcenaro, who died in Gibraltar, where she and her husband resided, or the daughter, Mrs. Bertoli, who resided in New Orleans, should inherit the interest of Anna Bardino Marcenaro in the succession of her brother, Joseph Bardino, who had died in New Orleans,
 
 *985
 
 where he resided, and whose succession was being administered when his sister, Anna Bardino Marcenaro, died in Gibraltar. It was said: “No part of Anna Bardino’s interest in her brother’s succession was ever reduced to possession by Marcenaro [her husband] during her life-time.” It was held, of course, that Anna Bardino Marcenaro’s daughter inherited Anna Bardino Marcenaro’s interest in her brother’s succession, in New Orleans. But the difference between that case and this is that Joseph Bardino, who died in New Orleans, 'and whose estate was inherited by his sister in Gibraltar and a half-brother in New Orleans, did not leave an instituted heir, or universal legatee; and so the sister, in Gibraltar, inherited, absolutely and immediately, three-fourths of his estate, in concurrence with the half-brother, who inherited one-fourth of the estate. Rev. Civ. Code, art. 913. The ruling in that case, therefore, is not at all pertinent to the case before us.
 

 The next case cited in the prevailing opinion in this case is Bone v. Sparrow, 11 La. Ann. 185. In that case, the court referred approvingly to the decision in Marcenaro v. Mordella, which, as I have explained, has nothing at all to do with the present case; but all that the court decided in Bone v. Sparrow was that the daughter, and not the husband, of a woman who had resided in Pennsylvania and died in Maryland, inherited her interest in the succession of her father, which was under administration in Louisiana. The court said, referring to the husband, who had transferred his interest in the succession of his wife, whose father’s succession was under administration in Louisiana when she died in Maryland: “By the laws of Pennsylvania and Maryland, if the husband has not, during his life, reduced to possession the choses in action of his wife, they will pass to her representatives.” Having so decided the case according to the laws of Pennsylvania and Maryland, the court adverted to Marcenaro v. Mordella as authority for this proposition: “that the laws’of Louisiana must control the distribution of the residuary interest of a succession under administration in this State — the right of action for the recovery of the same being immovable from the object to which it applies.” But that, of course, has nothing to do with the right of action of a nonresident forced heir to sue the universal or residuary legatees in Louisiana, for a reduction of the legacies.
 

 In the next case cited in the prevailing opinion in this case, Williams v. Pope Manufacturing Co., 52 La. Ann. 1417, 27 So. 851, 50 L. R. A. 816, 78 Am. St. Rep. 390, all that was decided was that the right of action of Mrs. Williams, for herself and on behalf of her minor child, for damages for an unlawful arrest and malicious prosecution in Louisiana, she being a resident of Mississippi, was not community property, and might be exercised by her, not only in her own behalf but also for the use and benefit of her child, the father having abandoned the matrimonial domicile' and his whereabouts being unknown. Surely that decision has nothing to do with this case.
 

 ' The next case cited in the prevailing opim ion in this case, Weber v. Ory, 14 La. Ann. 537, is authority only for the proposition that a right of action of a nonresident heir to compel a partition of real estate [and slaves] be
 
 *987
 
 longing to a succession under administration in Louisiana is considered as an immovable, and thex-efox-e could not be conveyed by a testament made contx-ary to the laws of Louisiana. The decision has no relation whatever to a right of action of a nonresident forced heir to demand a reduction of a bequest or donation made in Louisiana.
 

 In the next and last case cited, White v. White, 50 La. Ann. 104, 23 So. 95, all that was decided was that a suit by the heirs to recover from the succession of their father their intex-est (which he had received) in the succession of their mother was not a personal action, and therefore not barred by the prescription of five yeai-s or ten years, but, being an action to recover an entire succession, was subject only to the prescription of thirty years. That was merely a restatement of articles 471 and 3548 of the Civil Code, and has nothing whatever to do with the question presented in this case.
 

 It is plain, therefore, that in all of the eases cited in the prevailing opinion in this case —except in the suit for damages for unlawful arrest, and malicious prosecution — the contest was over a succession under administration in Louisiana and governed by the inheritance laws of Louisiana. In this case the contest is over the succession of Mrs. Susie Jackson Hax-ris, which is under administration in Alabama and is subject to Alabama’s laws of descent and distribution. The sons and daughters and grandsons of Mrs. Hax-ris, who are seeking to reduce the legacy of $50,000 which she bequeathed to Mrs. Jessie McBride Maceo, are not heix-s at law of Oakley B. Harris, and do not claim anything or any right by inheritance from him. Their demand is merely to reduce the legacy of $50,000, in the will of Mrs. Harris to what would be the disposable portion of' her estate if her will were governed by the laws of Louisiana. I do not believe that the courts of Louisiana have authority or jurisdiction to apply the law of forced heirship to the will of a person who was domiciled and died in Alabama, leaving a will disposing of her estate, consisting of property in Alabama and a chose in action against residents in Louisiana. If the courts in Louisiana undertake to apply the law of forced heirship to the will of Mrs. Harris, to what extent will the coux-ts go in determining what was the disposable portion of her estate? The disposable portion was not limited to a third of the chose in action in Louisiana, but was limited, if limited at all, to a third of the whole estate of the testatrix. According to article 1505 of the Civil Code: “To determine the reduction to which the donations, either inter vivos or mortis causa are liable, an aggregate is formed of all the property belonging to the donor or testator at the time of his decease; to that is fictitiously added the property disposed of by donation inter vivos, according to its value at the time of the donor’s decease, in the state in which it was at the period of the donation.” That ai-ticle further provides that the sums due by the estate are to be deducted from the aggregate amount and the disposable quantum is to be calculated on the balance. Articles 1505 to 1518, inclusive, prescribe additional rules for calculating the disposable portion of-an estate, and the légitime reserved to forced heirs. How can a court in Louisiana
 
 *989
 
 apply these rules to a will that is governed in its validity or effect by the laws of another state?
 

 It is said in the prevailing opinion in this case that the reason why Mrs. Harris did not exercise judicially her right to claim her légitime in her son’s estate in Louisiana was that her right was recognized in an accounting with- the inheritance tax collector, and the tax was paid, and that she herself “exercised her right in fact by bequeathing out of that interest the sum of $50,000 to Mrs. Jessie McBride Maceo.” The important fact, however, is that, when Mrs. Harris died, she had not acquired a title or possession of any property in Louisiana. All that she had in that respect was the right of action to demand from the legatees named in the will of her son a reduction of the legacies to the disposable portion of his estate; which right depended upon the many contingencies and calculations set forth in articles 1505 to 1518 of the Civil Code. And all that the sons and daughters and the two grandsons of Mrs. Harris are claiming here is the right to reduce the legacy of $50,000 given to Mrs. Jessie McBride Maceo to the disposable portion of the estate of Mrs. Harris. The fact that the right of action of Mrs. Harris was “recognized” by the executor of the succession of Oakley B. Harris, in paying the inheritance tax on his estate, and the fact that Mrs. Harris herself “recognized” her right by bequeathing to Mrs. Jessie McBride Maceo $50,000, to be paid out of such sum as Mrs. Harris might obtain from the estate of her son, are matters of no importance whatever in determining whether the courts of Louisiana have jurisdiction to order a reduction of legacies or donations made by one who lived and died in Alabama, and whose succession is under administration there.