(35 South. 599.)

No. 14,532.

WEIL v. JACOBS' ESTATE.*

(Nov. 16, 1903.)

PRESCRIPTION — EVIDENCE OF PAYMENTS — COMMUNITY—ACCEPTANCE BY WIDOW—ACKNOWLEDGMENT OF DEBT.

1. Plaintiff issued executory process upon promissory notes which were prescribed on their face. The proceedings were enjoined by the widow and heirs of the maker, Jacobs, who pleaded the prescription of five years. Plaintiffs sought to prove an interruption of prescription by parol evidence that certain checks made by third parties to the order of Henry Jacobs had, in order to pay the interest upon the notes, been handed to the plaintiff by Jacobs, with the words "Henry Jacobs" indorsed upon them, and that, as so indorsed, they were paid on presentation. The name "Henry Jacobs" was written by neither the maker, Jacobs, nor by any agent for him. The testimony, under article 2278 of the Civil Code, was inadmissible for that purpose.

2. A widow who has accepted unconditionally the community which had existed between herself and her husband is entitled to the protection of the provisions of article 2278, Civ. Code, when it is sought to hold her liable upon notes executed by her husband which are prescribed upon their face through parol evidence of an acknowledgment or promise to pay the same made by her husband.

3. After prescription has accrued upon a note, a written acknowledgment of the continued existence of the debt does not carry with it a legal liability to pay, in the absence of a written promise to that effect.

(Syllabus by the Court.)

Certiorari to Court of Appeal, Parish of Orleans.

Action by Leopold Weil against the estate of Henry Jacobs. Judgment for plaintiff was affirmed in part by the Court of Appeal, and certain of the parties to such appeal apply for certiorari or writ of review. Reversed.

Edgar M. Cahn, for applicants. Saunders & Gurley and Denègre, Blair & Denègre, for

*Rehearing denied December 14, 1903.

respondent Leopold Weil. Dinkelspiel & Hart, for respondent civil sheriff.

Statement of the Case.

NICHOLLS, C. J. On the 27th of January, 1900, the plaintiff applied for and obtained from the civil district court for the parish of Orleans a writ commanding the seizure and sale of certain property in the city of New Orleans in enforcement, by way of executory process, of two promissory notes, the payment of which had been secured by special mortgage and vendor's privilege, by act before Kirchner, notary public, on the property so ordered to be sold.

The notes were drawn by Henry Jacobs to his own order, and were by him indorsed, both dated December 28, 1887; each being for $800, with 8 per cent. interest thereon from date until paid.

The petition for executory process alleged that interest upon these notes had been paid up to December 28, 1898, and that the principal of such notes, with interest thereon from December 28, 1898, was due and unpaid; that Henry Jacobs had died, leaving a widow in community, Mrs. Yetta Frank Jacobs, and several children and heirs—among others, Isidore Jacobs, an interdict, to whom his mother, Mrs. Yetta Jacobs, had been appointed curatrix, and who had qualified as such; that the succession of Jacobs had not been opened.

The executory proceedings were conducted contradictorily with these parties. The sale of the property under the order was stayed by an order of injunction which issued upon the joint petition of Mrs. Yetta Jacobs, acting in her own behalf, as widow in community, and as curatrix of Isidore Jacobs and of the heirs of Henry Jacobs.

They averred in support of their demand for injunction that, upon inspection of the notes declared upon, they found that they corresponded in date, amount, indorsement, and signature with the notes executed by the deceased, Henry Jacobs, in the act before Kirchner, notary, but that said notes bore no legal value or effective formal renewal or extension by the deceased of any sort or description; that the only interest payment indorsed on the front of said notes, to wit, that payable at one year, appears to have been made under date of December 28, 1891, and

the only interest payment upon the second of said notes appears to have been made under date of December 26, 1890; that, as such, the said instruments being long since prescribed by the completion of the full time of prescription on the first mentioned so long ago as December 31, 1897, and, on the second mentioned, still more remotely, to, wit, on December 31, 1896, they declined to accede to the demand for the payment of the same. They averred that, with the completion of the term of prescription of the notes, the mortgage originally given, securing payment of the same, became perempted and extinguished with the failure of the principal obligation securing them, and they were entitled to a judgment of the court directing the recorder of mortgages to cancel and erase the inscription of the same.

They pleaded against the notes and mortgage the prescription of five years, and prayed for an injunction against the sale of the property. A preliminary injunction issued as prayed for. Plaintiff answered the petition for injunction, pleading first the general issue. He denied that the notes were prescribed. He alleged that Henry Jacobs paid the interest accruing on said notes, or part thereof, every year during his lifetime, and thereby prevented the running of prescription on the same; that on December 10, 1898, he, being then alive, gave respondent a check for $21, to the order of and indorsed by himself, on account of the interest due on said notes, and on February 10, 1899, he, being then alive, handed to respondent a check to the order of and indorsed by himself for $19 on account of the interest due on said notes, and on April 10, 1899, he gave to respondent a check for $17 to the order of and indorsed by himself on account of interest due on said notes. He further averred that when he acquired said notes the said Henry Jacobs transferred to respondent an assignment, signed by himself, of a policy of fire insurance on said mortgaged property as collateral security for said notes, and that policies for the fire insurance on the said property had ever since been held by respondent as collateral to said notes, with the knowledge and consent of said Jacobs, who himself did not take out or hold any insurance on said property; that, under the facts and circumstances, no prescription had accrued upon the notes. Upon trial of the injunction it was made perpetual as to the undivided half of the property ordered to be seized and sold, belonging to the children and heirs of the deceased Henry Jacobs, but dissolved in so far as it enjoined the sale of the undivided half of the property belonging to Mrs. Yetta Frank Jacobs, the widow of Henry Jacobs.

The widow in community appealed from this decision, so far as she was concerned, in the Court of Appeal, and later the plaintiff appealed. The two appeals were consolidated in the Court of Appeal. That court affirmed the judgment of the district court in so far as it had decided in favor of the plaintiff and adversely to the widow, Mrs. Yetta Jacobs, but reversed it in so far as it had rendered judgment in favor of the children and heirs of Henry Jacobs. The case is before this court for review of the Court of Appeal upon the application made to it by all the parties cast in that court.

The note which fell due in December, 1890, has the following writings upon it:

"New Orleans, Dec. 26/90. The interest on within note up to Dec. 28, 1890, has been paid."

"New Orleans, Dec. 3/91. The interest on within note has been paid up to Dec. 28–91, fixed. H. Jacobs."

"New Orleans, Dec. 31/92. The interest on the within note has been paid up to Dec. 28/92, fixed. H. Jacobs."

A similar indorsement, but without signature, appears on the note acknowledging payment of interest for the years 1893, 1897, and 1898, under date of December 31, 1893, December 28, 1894, December 31, 1897, and December 28, 1898.

Upon the note payable two years after date (December 28, 1891) there is an indorsement under date of December 28, 1890, of payment of interest on the note up to that date. Under this indorsement is the signature "H. Jacobs."

Under this, and as of date December 3, 1891, is an indorsement, without any signature, that interest had been paid on the note up to December 28, 1891.

Just below this, and as of date December 31, 1892, is a similar indorsement, without signature, of payment of interest up to December 28, 1892.

A similar indorsement, without signature, as of date December 31, 1893, of payment of interest up to that date.

A similar indorsement, and as of date December 30, 1894, is a similar indorsement of payment of interest up to that date. In between the lines of this indorsement, but reversed, is the signature, "H. Jacobs."

On December 31, 1897, is an indorsement, without signature, that payment of interest had been paid up to that date; and below it, as of date December 28, 1898, is a similar acknowledgment, but without signature, of payment of interest up to that date.

Of the two signatures ("H. Jacobs") in this note, the last is evidently the original indorsement made by Jacobs upon the note for the purpose of transferring it.

On the trial of the case, plaintiff introduced in evidence a number of policies of fire insurance upon the property mortgaged, the first of which had been taken out by Jacobs himself and transferred to the ·plaintiff; the others taken out by plaintiff, and held by him to protect the property mortgaged, and by so doing collaterally secure his debt. Plaintiff contended that the effect of the holding by plaintiff of these policies was to give him a "continuing pledge," operating an interruption of prescription. Defendant objected in his answer to the introduction of these policies in evidence, as plaintiff had not referred to them in his answer.

The plaintiff introduced in evidence, with the view of interrupting as against Mrs. Jacobs the prescription pleaded, the record in the matter of the interdiction of her son Isidore Jacobs. It appears that after his father's death proceedings were taken by his mother which resulted in his interdiction, and her appointment as his curatrix. For that purpose she applied for the taking of an inventory, which, on being taken, she signed; and it was afterwards, on her prayer to that effect, homologated. In this inventory the property, after being described, was declared, in its entirety, to be worth and valued at $3,200, but it was stated to be mortgaged for the sum of $1,600.

The naked title of the one-eighth interest of Isidore Jacobs was therefore valued at $200.

The inventory also showed that his immediate interest in the personal property of the succession was appraised at $400, making his total property $600.

The district judge assigned the following reasons for judgment:

"The plaintiff's foreclosure is on two mortgage notes, for $800 each, dated December 28, 1889, with 8 per cent. interest from date, due at one and two years.

"Hy. Jacobs, the maker, is dead, and the foreclosure is against his widow and heirs, who enjoin the process, pleading prescription.

"The notes are credited with interest paid up to December 28, 1898. It looks as if the deceased signed the credit of December 28, 1890, on the one note, and of December 28, 1891, on the other. Whether his signature be his indorsement in blank of the notes to his own order, or his signature to the written entry of these credits, may be a question; but it does not matter, as, even if signed by him December 28, 1890, and December 28, 1891, prescription has become complete since either date.

"The indorsements are all alike (i. e., those made since the two above alluded to), and look as if they were all entered by one hand at one and the same time. They do not look as if they had been separately indorsed at yearly intervals. Ink, pen character, and all, they appear thus to me.

"On each note there is no entry of interest paid for 1895 and 1896. The omission is the same on each.

"Sol. L. Weil seems to testify that he wrote all of these credit indorsements at one time, except that the first two credits were written by Sam L. Weil.

"If they were thus written, all at once, on or after December 28, 1898, that is a significant fact. It is at least unusual, considering that the period of from 1890 and 1891 to 1898 purports to be covered by the several writings. This is not the usual course. The suggestion may not be correct, but it would seem an effort to repel in advance the prescription which the heirs of the dead maker of the notes might plead if sued. But discussion further is unnecessary, for no indorsement thus made bears the signature of said deceased, and ergo the legal effect is nil. There is therefore on the notes themselves no evidence of the interruption of the consent of prescription, and, for all that appears upon said notes, the plaintiff's action is prescribed.

"Dehors the notes, plaintiff relies upon (3) three bank checks, and certain parol evidence regarding them, to upset the plea: One check is for $21, drawn by the Fisk F. & P. Library to the order of the deceased, and is dated

December 10, 1898; one is by same drawer to same order for $19, and of date February 10, 1899, and the third one, to same order, by Peter Casher, for $19, of date April 10, 1899. Each of these checks has the name 'H. Jacobs' indorsed, but the proof renders it certain that the deceased did not write his name thereon. He was illiterate, wrote his name mechanically, and the hieroglyphics which he traced for his name whenever he did sign anything as shown by his signature to his registration certificate, to the notes sued on and to other documents produced, established beyond doubt that he did not with his own hand write his name upon said checks, in the indorsement and passing thereof.

"Each one of these checks was deposited by plaintiff in bank to collect for his account, as the usual bank stamps and writing thereon show.

"The question is, do these checks interrupt prescription; i. e., do they afford written proof of acknowledgment by deceased?

"As they are not indorsed by him, nor by any agent thereunto specially authorized in writing to so indorse them for him, it would seem that, as written proof, they do not meet the requirements of Rev. Civ. Code, art. 2278, as amended by Acts 1886, No. 121, p. 219.

"There is proof by parol (excepted to by defendants) that these checks were delivered by deceased personally to plaintiff at their date in payment of interest due on these notes, and that his name was indorsed on them as the same appears, whether written by him or not, when he thus delivered said checks to plaintiff. The argument is that these facts estop the deceased and his heirs from denying that he wrote his name on said checks. If deceased were alive, the estoppel would be perfect; but he is dead, and the statute excludes proof by parol. If his acknowledgment, under the statute, must be in writing, then I do not see how an estoppel which is to operate as the equivalent of such writing could be recognized as competent evidence, unless it equally resulted from some writing signed by the deceased. If, in other words, parol evidence can be received and considered to show facts which oblige the deceased or his heirs to admit that he did acknowledge it in such manner and under such circumstances as to make his con-

duct the equal of a written acknowledgment signed by him, then the prohibitions of the statute against the admission or consideration of parol testimony to prove the acknowledgment of a dead man can be easily avoided.

"When there is written evidence (i. e., written acknowledgment) signed by deceased, or by his agent specially authorized in writing to acknowledge, parol evidence may be received to connect acknowledgment, as in McGinty v. Henderson, 41 La. Ann. 383, 6 South. 658, and cases there cited; but in the case at bar there is no writing by deceased, nor by his agent under authority in writing signed by deceased, as required by Rev. Civ. Code, art. 2278, and Acts 1886, No. 121, p. 219.

"The terms of the statute are absolute. They prohibit parol proof, and the jurisprudence prohibits the application or use of parol even if put in the record without objection. The statute is one of public policy, known as the 'Statute of Frauds.' Its object is to protect the estates of dead men. Its teaching is to induce living men, in dealing with each other, to put in writing the evidence of their intention to keep in force obligations which are stale, or on their face barred by prescription, and to warn them that parol will not be efficacious to revive or take such actions out of prescription if the obligor should die. Lehman, Abraham & Co. v. Mahier's Estate, 34 La. Ann. 321; Coyle v. Succession of Creevy, Id. 543; Goodman v. Rayburn, 27 La. Ann. 639; Millard v. Smith, 25 La. Ann. 491; Pavy v. Escoubas, 23 La. Ann. 531.

"In this case there is no writing of deceased, or of his agent authorized in writing, as required by article 2278, Rev. Civ. Code, and Acts 1886, p. 219, No. 121, to show that he paid on these notes in 1898 and 1899. Without such written evidence as the basis, parol proof to connect or explain is inefficacious, and must be excluded. I admitted it to give plaintiff full opportunity to bring his case under the rule of McGinty v. Henderson, 41 La. Ann. 383, 6 South. 658, knowing that, if I erred in so doing, I could not regard it, if on the whole record plaintiff should fail to show a written acknowledgment by deceased as the basis. On the whole record, I find no written acknowledgment, and no act

evidenced by writing equal to acknowledgment, signed by deceased, or by his agent authorized in writing by him; and, so far as the three checks relied on are concerned, they afford no legal proof of any acknowledgment.

"Two of these checks bear dates subsequent to the last credit entered on the notes. The parol evidence as to deceased paying 'by dribs' and taking no receipts, even if admissible, would by no means strengthen the plaintiff's case on this issue. In like manner, the several insurance policies relied on contain no writing of the deceased. Like the checks, parol alone gives them any connection with any act of deceased that could make them operative as acknowledgments. None of said policies except the first bears his signature, and the date of that is much beyond five years prior to this suit.

"The effect of the inventory alone remains to be considered. It was taken on ——, 1899, in the matter of the interdiction of a son and one of the heirs on the application of his mother, widow of deceased, for such interdiction.

"It describes the mortgaged property, and recites that it is mortgaged for $1,600. The certificate of mortgage shows that plaintiff's mortgage of $1,600 is the only mortgage on the property. Is this such an acknowledgment of the notes due plaintiff as will take them out of the prescription which had run, deceased at that time being dead?

"It is alleged by the defendants in the petition for injunction that they are, respectively, widow in community and usufructuary and children and heirs of deceased. This amounts to acceptance, purely and simply, and binds the widow for one-half, and the four children each for his virile share of the other one-half, of the debts due by deceased, and their acceptance relates back to the date of his death.

"The widow signed the inventory, and points out the property, and in the inventory, in order to show the estate of the heir who is an interdict, the property is valued at $3,200, and from this value is deducted $1,600, the amount of the mortgage; the naked title (widow being usufructuary) of the one-eighth interest of the interdict being slated at $200 (i. e., one-fourth of one-half, or one-eighth of the whole).

"This was the widow's written acknowledgment of the mortgage debt, signed by her. The testimony of Leopold Weil shows her knowledge of the debt, and her verbal promise to pay it. It does not seem to me to make any difference whether she had seen the notes or not, or whether or not she knew they were, on their face, prescribed. She knew of the mortgage, and in fixing in the inventory the amount of the estate of the interdict, and as the basis for her own liability as his curatrix, she deducted the amount of the mortgage, $1,600, from the value of the property, $3,200, thereby recognizing the mortgage as alive and as bearing on the property.

"I think that this acknowledgment binds her, as widow in community, personally.

"It did not take the notes out of the accrued prescription, so as to bind the interdict, for she was without written authority to waive any legal right of the interdict.

"Nor did her acknowledgment affect the heirs of deceased, for they were not bound in solido with said widow. Buard v. Lemee, 12 Rob. 243; Reynolds v. Rowley, 2 La. Ann. 890.

"Judgment will be entered perpetuating the injunction in favor of the defendants the four children of deceased, and declaring the plaintiff's action against them and their one-half joint property prescribed, at plaintiff's costs.

"Judgment for plaintiff, dissolving the injunction and dismissing the suit as to the widow of the deceased, and recognizing the plaintiff's right to foreclose against her undivided half (½) interest in the mortgaged property for the payment of the one-half of the mortgage debt due to him by her as surviving widow in community; said defendant to pay all costs by plaintiff incurred against her.

"Judgment dismissing plaintiff's claim for damages as of nonsuit."

### Opinion.

The date at which the present action was brought, compared with that of the maturities of the notes sued upon, made it incumbent upon the court to sustain the plea of prescription, filed by the defendants, unless the plaintiff had affirmatively establish-

ed on the trial facts which were made sufficient in law to have prevented the accruing of the prescription, or which would have removed the same, had it accrued. The maker of the notes having died before the institution of the suit, the evidence necessary to establish these facts must not only have been that which would in ordinary cases have sufficed to carry conviction to the judicial mind as to their existence, but it must likewise have been evidence such in character as the law required to be adduced in order to effect these results.

Our judgment in this case rests not upon the sufficiency of the testimony adduced, but upon its legal admissibility and effect. There are numerous instances to be found in the law where, as here, certainty on the part of judges as to the existence of certain facts would not warrant them in acting judicially upon that certainty. A familiar example of this is as to the wishes of parties expressed in wills which cannot stand the test of legal requirements as to form. No matter how clearly expressed may be the intentions of the testator, nor how legal his bequests may be, they avail nothing, for courts are powerless to recognize or enforce them.

We do not think the testimony adduced by the plaintiff was legally such as justified that portion of the judgment of the district court which was rendered in his favor against the widow of Henry Jacobs, or as to justify the judgment rendered by the Court of Appeal on the appeal to it.

The lawmaker had declared, in language explicit and precise, in article 2278 of the Civil Code, not only that "parol evidence shall not be received to prove any acknowledgment or promise of a party deceased to pay any debt or liability in order to take such debt or liability out of prescription, or to revive the same after prescription has accrued, or to prove any acknowledgment or promise to pay any debt or liability evidenced by writing when prescription has already run," but it has gone further, and declared that in all the cases mentioned in the article the acknowledgment or promise to pay shall be proved by written evidence signed by the party who is alleged to have made the acknowledgment, or by his specially authorized agent or attorney in fact.

We have, therefore, legislative directions not only as to what shall not be done, but also positive orders as to what has to be done in order to accomplish the interruption or the renunciation of prescription.

There is no claim made in this case of an acknowledgment or promise having been made by an authorized agent or attorney. The acknowledgment or implied promise to pay which the plaintiff relies on is that of Jacobs himself, the maker of the note.

The object of the law was undoubtedly to make certain and place beyond question the fact of the acknowledgment or promise by the debtor, but this is not a case where the doctrine of equivalents has any place. We have to be guided exclusively by the terms of the statute, and have no authority to act upon evidence or proof other than that made requisite by the law, no matter how certain or conclusive it might be.

Have we before us any proof of an acknowledgment or promise to pay made by Jacobs, evidenced by a writing signed by him? We certainly have not. It is not pretended that Jacobs ever touched the pen when the words "Harry Jacobs" were placed on the checks which he handed to the plaintiff. The utmost asserted is that, those words being already written by some one else upon the checks, they were handed by Jacobs to the plaintiff, and were in due course paid by the drawer of the check. There is no doubt that, had any issues arisen in a suit between the parties touching that particular check, Jacobs would have been estopped from denying the authenticity of the indorsement; but that check and its indorsement are not before us for the purpose of a decision of issues between the parties thereto arising out of the same. They are before us only for the purpose of being utilized collaterally in another and distinct suit. We do not think this, under the law, could be done.

The evidence shows that, while Jacobs could not read or write, he could and did frequently, himself physically, attach a signature as his own to instruments in which he was concerned. The notes declared upon have that signature attached to them, and, once seen and known by any one to be the signature adopted by himself, it was easy to be recognized and identified as his—as fully so

as if all the letters of the name had been plainly traced upon the paper.

Plaintiff's counsel charge the widow and children of Jacobs with gross ingratitude to a man who was their benefactor, and who, in the very matter of these notes, had taken them up as a friend, and to assist them. While this may be so, and we might agree with them that defendants' conduct was reprehensible, passed upon from the standpoint of gratitude and propriety, this court would be utterly without justification, were it to stretch the law of prescription in order to do away with the unpleasant and hard features which the case presents. The plea is one which the law authorizes to be made, and which is not weakened in its effect by bad faith on the part of the persons setting it up. Civ. Code, art. 3540.

The defendants in this case are the widow and children of Henry Jacobs. The widow has accepted the community unconditionally, and the heirs of Jacobs have accepted his succession as unconditionally.

It is a general rule in matters of succession that the unconditional heir of a person is his representative, and stands in his place and his rights (Civ. Code, art. 894); that these rights are transmitted to the heir with all its defects as well as its advantages; that the extent of the rights of the deceased regulates those of the heirs who succeed to all his rights which can be transmitted—that is, to all those which are not, like usufruct, attached to the person of the deceased. Civ. Code, art. 943.

The consequence usually of this doctrine is that any act which binds or estops the deceased binds or estops those heirs, but the lawmaker has thought proper to modify this rule under certain circumstances and for certain purposes, and it has done this in this very matter of the interruption or renunciation of prescription. The heirs, for obvious reasons, have been authorized to demand from holders of claims against their father much higher and stronger evidence of acknowledgment of debts and promises to pay than the father himself could have required had he been alive. The acknowledgment or promises of the father being once established by the evidence and proof required by law, the heirs, as such, are, as to their rights and obligations, governed by the general rules of law.

Plaintiff's counsel contend that the widow in community occupies a position as to the acts done by the husband during the community different from that which the heirs occupy as to the acts of their father during his lifetime.

They say that "the law looks upon the community in the light of a partnership; that during marriage the husband is the administrator—the managing director of the concern, so to speak. On the death of the husband the wife has the privilege of accepting or renouncing it, as she may deem most to her interest. If she accepts, she is considered as having always been a member of the community partnership. If she renounces it, it is considered that the community never existed.

"By her acceptance the wife acquires the rights and incurs the obligations which exist, on the theory that there had always been a community partnership. The obligations which she incurs are community obligations; that is, they are not her own direct and immediate obligations, but they reach and bind her indirectly, through the fact that she is a member of the community partnership. Her liability is secondary and derivative. The law considers that the community has existed as a distinct legal personage during the marriage. The wife's relation to the community debt is therefore analogous to the relation of a partner to a partnership debt."

They quote Laurent, Principes du Droit Civil, vol. 22, p. 408, as saying: "La femme par suite de son acceptation est censée avoir été partie dans tous les actes faits par le mari comme chef de la communauté. Pothier lui meme applique ce passif. Par son acceptation, dit il, la femme devient débitrice pour sa part dans la communauté de toutes les dettes de la communauté: elle est censée les avoir contractée en sa qualité de commune conjointement avec son mari"—and add: "This being so, the statute does not apply so as to exclude evidence of the husband's acts and acknowledgments touching a community debt in his capacity of administrator to the community. The statute regulates the admission of evidence in cases

where the deceased alone owed the debt. It was not concerned with debts which were due by a partnership, firm, or other body of which the deceased was a member. The law might suspect parol evidence concerning a debt that rested on the deceased alone, but there is no such reason for suspecting parol evidence concerning a debt due by a partnership.

"In such case the acts and acknowledgments of the husband should stand on the same footing as the acts and acknowledgments of a member of a firm."

There can be no doubt that, when the wife accepts absolutely the community of acquets and debts, she becomes liable personally for one-half of the community debts, and that the acts and acknowledgments of the husband, when they have been shown, bind her; but, in order to bind her, these acts and acknowledgments must first be proved to have been made by him, and, for the purpose of interrupting prescription or renouncing prescription upon a claim prima facie prescribed through acts and acknowledgments of the debtor, the same character of evidence is required to be adduced to establish these acts in the case of community debts as would be necessary in the case of separate debts. No good reason can be adduced why there should be any difference as resulting from the character of the debts. The community is not a "partnership," as claimed by the plaintiff. Civ. Code, art. 2807. But even if it were a partnership, the statute applies as well to the proof of the acts and acknowledgments of a deceased which would be necessary to take a partnership debt out of prescription as to acts and acknowledgments necessary to take an individual debt of the partner out of prescription. The fact which impelled the General Assembly to enact the particular statute referred to was the same in all these cases, namely, the death of the party claimed to have made the acknowledgments, which made refutation or contradiction of the evidence which would be offered to establish the same very difficult, and in many cases impossible.

The plaintiff brings forward as a fact interrupting the running of prescription upon the notes that when he purchased the notes, December 26, 1890, Jacobs transferred to him certain fire policies then outstanding, which he had taken out for protection against loss by fire on the property which by special mortgage and vendor's privilege secured payment of the notes so purchased.

It appears that these notes represented the credit portion of the price of property which had been purchased by Jacobs, and the act of purchase contained a clause binding the latter to take out and transfer a policy of fire insurance on the house, and authorizing the holder of the notes himself to keep up the insurance in case Jacobs failed to do so. Plaintiff says policies so transferred were in favor of Jacobs, loss, if any, payable to Weil, as holder of the notes; and, when these policies expired, Weil took out similar policies, and so continued to do from year to year until Jacobs' death. Counsel urge that the policies so taken out were taken as collateral security for the payment of the notes, and possession of the policies operated a continuing pledge in Weil's favor, suspending the running of prescription under the decision in Begue v. St. Marc, 47 La. Ann. 1163, 17 South. 700; that Weil, in taking out the policies, was acting as the agent of Jacobs, under authority so to do contained in the notarial act of sale.

The clause referred to was as follows:

### Insurance Clause.

"And the said purchaser (Jacobs) furthermore binds himself to keep the buildings on said property constantly insured against the loss by fire to an amount not less than sixteen hundred dollars, and to transfer the Policy of Insurance to the said vendor until the full and final payment of said note, hereby consenting and agreeing that said vendor shall have the right to transfer such policy to any future holder or holders of the said note, and that in the case of failure on the part of such purchaser to effect such insurance the holder or holders of the said note shall have the right to do so, and the reimbursement of all sums paid for that purpose shall be secured by the mortgage herein granted, and the amount of the premiums thus paid by said holder or holders never to exceed the sum of one hundred dollars per annum; but this clause shall not be construed as obligating on such holder or holders as making them liable for any loss, damage, or injury which may result from the noninsurance of the said buildings."

We do not think the taking out by Weil of the policies referred to had the effect of interrupting prescription upon the notes. The policy taken out in the Begue Case was taken out by the debtor, and not, as in the case at bar, by the creditors, and the debtor was still alive when the evidence was introduced.

It is urged by the plaintiff that the widow of Henry Jacobs after the death of her husband acknowledged the continued existence of the notes held by plaintiff, when she signed the inventory taken in the matter of the interdiction of her son Isidore Jacobs, and prayed for the homologation of the same. In this inventory the debt was referred to as existing and secured by a mortgage on the property inventoried. At that date prescription had run against the debt. A mere recognition of the existence of the debt made under such circumstances did not revive the debt against Mrs. Jacobs. She made no promise to pay it. This feature of the case is covered by the decisions of this court rendered in the matter of the Succession of Slaughter, 108 La. 492, 32 South. 379, 58 L. R. A. 408, which had not been rendered at the time this present case was passed upon by the Court of Appeal.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment of the Court of Appeal, in so far as it annuls, avoids, and reverses the judgment of the district court in favor of the heirs of Henry Jacobs, sustaining the plea of prescription filed by them, is itself annulled, avoided, and reversed, and the judgment of the district court in favor of said heirs, sustaining said plea, be, and it is, hereby, affirmed.

It is further ordered, adjudged, and decreed that the judgment of the Court of Appeal, in so far as it affirms the judgment of the district court overruling the plea of prescription filed by the widow of Henry Jacobs, and renders judgment against her in favor of the plaintiff, be, and the same is hereby, annulled, avoided, and reversed, and the judgment so decreed against said widow by the district court is hereby annulled, avoided, and reversed, and

It is now ordered, adjudged, and decreed that plaintiff's entire demand be, and it is, rejected, and his suit dismissed, at his costs in both courts.