(129 So. 651)

## BURDIN v. BURDIN.
### No. 30242.

June 2, 1930.

Rehearing Denied July 2, 1930.

.W. C. Perrault and George K. Perrault, both of Opelousas, for appellant.

Dan W. Voorhies, of St. Martinville, and Burke & Smith, of New Iberia, for appellee.

ROGERS, **J.**

John J. Burdin, the defendant, was married twice. His first wife, Elizabeth Franz Burdin, died on or about November 13, 1906. Defendant's second marriage was contracted on July 18, 1911.

Defendant opened the succession of his first wife on December 6, 1906, praying to be confirmed as natural tutor of his four minor children, issue of the marriage, of whom, the plaintiff, Frances Hilda Burdin, now the wife of Barnard Cummings, was the eldest. However, nothing was done at the time except to make an inventory of certain swamp lands situated in the parish of Iberia. Later, namely, on June 6, 1911, plaintiff presented another petition to the district court in the same proceeding praying to be confirmed as natural tutor of his children and that an undertutor be appointed. An inventory of the property in the parish of St. Martin was then taken, defendant was confirmed as natural tutor, and an undertutor was appointed.

After due proceedings, the community real estate in St. Martin and Iberia parishes was, on June 28, 1911, adjudicated to defendant. Subsequently defendant filed an account of his tutorship, which account was homologated by the district court, fixing the respective claims of his minor children, $1,859.54 each, against him. Thereafter, on defendant's application, a special mortgage on specific property was substituted for the general mortgage resulting from the tutorship and the special mortgage resulting from the adjudication.

The plaintiff, Frances Hilda Burdin, wife of Barnard Cummings, became of age September 26, 1912. She lived with her father, the defendant, until her marriage with Cummings on February 23, 1921, which marriage took place at the defendant's home in the town of St. Martinville. The present suit was

filed on February 19, 1927, fourteen years after she had reached her majority and six years after her marriage to Cummings.

Plaintiff, in her petition, charges that defendant failed to inventory all, the property belonging to the marital community, particularly the movables, for the fraudulent purpose of converting the property to his own use. She also attacks as false and fraudulent the tutor's account, the judgment of adjudication, the special mortgage and, generally, all the proceedings had in the succession of her mother. Plaintiff avers want of knowledge of the alleged fraudulent acts of the defendant until the year 1926, when she was informed thereof by the attorneys whom she had consulted in regard to the matter. Plaintiff prayed for judgment, recognizing her as an heir of her deceased mother, and, as such, entitled to her undivided interest in the community property; annulling the judgment of adjudication, and decreeing the property described therein to form part of the community estate, to the end that it may be partitioned after the liquidation of the marital community; setting aside the judgment homologating the account of tutorship; annulling the order of court authorizing the substitution of the special mortgage for the general mortgage and reinstating the general mortgage; ordering an accounting by the defendant for all moneys and other property belonging to the marital community, which he failed to have inventoried; and ordering defendant to account for all rents and revenues of the community property since November 13, 1906.

In the alternative, plaintiff prayed for judgment against defendant for $1,859.54, with legal interest thereon from June 29, 1911, the date the account of tutorship was homologated, and ordering defendant to account for all cash and movables omitted from the inventories and forming the community estate, with interest, including the value of timber removed from lands in the parishes of Iberia, St. Martin, and Iberville.

The defendant excepted to plaintiff's demand, and also filed pleas of prescription of one, three, four, five, and ten years to the various elements making up the demand. After hearing the parties, the judge of the district court maintained the pleas of prescription and dismissed plaintiff's suit. Plaintiff has appealed from the judgment, and defendant has answered the appeal, praying that his exceptions as well as his pleas of prescription be maintained.

Manifestly, it is unnecessary to consider defendant's exceptions if his pleas of prescription are well founded, which is the case unless the prescription pleaded has been interrupted by defendant's fraudulent acts, or renounced by defendant's acknowledgment of the claims on which plaintiff predicates her action.

So far as plaintiff's allegations of fraud are concerned, the judge of the district court found that they were not only not sustained by the evidence, but that the evidence did not even suggest any ground for such charges. Our examination of the record has caused us to reach the same conclusion.

The testimony shows: That the plaintiff resided with and was cared for by her father up to the date of her marriage. That she was not in normal health, and because of that fact he established a home in San Antonio, Tex., where she could reside for the benefit of her health, and, at the same time, receive an education at one of the schools at that city. That plaintiff received an excellent education and traveled extensively at her father's expense. That defendant was a kind and devoted father to all his children, particularly

towards plaintiff who was his eldest child and in ill health. That defendant was a man of moderate means only, and his care and devotion to his children was exhibited at some personal sacrifice on his part. That, after the marriage of plaintiff in 1921, the same relations continued between her and her father. That, though living at some distance from the paternal dwelling place, plaintiff and her husband frequently visited her father, staying at his home for long periods of time. That defendant not only extended financial assistance from time to time to plaintiff, but also extended the same kind of assistance to her husband. That these relations continued up to the year 1926, prior to which time there was no question between plaintiff and her father relative to her rights in the succession of her mother, which were regarded by them as having been satisfactorily settled prior to defendant's second marriage. That plaintiff had full access to the books and records of her father's office, as well as access to the public records. That the requests by plaintiff's husband on the defendant for financial assistance were for larger loans each time, until finally defendant wrote his son-in-law that he was doing what he could for all his children, and should not do for one more than he did for the other. That thereafter plaintiff's husband caused an investigation to be made into the proceedings in the succession of plaintiff's mother, and this suit was finally brought without any amicable demand on the defendant.

There is no room for doubt that the suit was wholly instituted at the instigation of plaintiff's husband and that plaintiff is an unwilling party thereto.

The proceedings in the succession of plaintiff's mother, the first wife of the defendant, are regular in form, and are not suggestive in any manner whatever of fraud or wrongdoing. They were evidently undertaken for the purpose of settling the first community before defendant's second marriage.

On the account filed by the defendant as tutor, he shows an indebtedness to his children collectively of $7,438.18. He also attached a memorandum to the account, setting forth that, since the death of his wife and up to the filing of the account on June 28, 1911, he had expended for the schooling, lodging, boarding, and general expenses of the children the sum of $17,500, which expenditure is not included in the account.

Defendant has not disposed of, nor attempted to dispose of, any of the real estate that he acquired in the succession proceedings of his first wife, notwithstanding it was a poor revenue producer, consisting largely of swamp lands which had to be protected against depredators and on which heavy annual taxes had to be paid.

There is certainly nothing in the foregoing facts to indicate that the defendant was actuated by any desire to defraud his children.

Plaintiff alleged, in the broadest and most general terms, that, after the death of his first wife, the defendant, without making an inventory thereof, took possession of large sums of money on deposit in bank and in hand, bank stocks, accounts, and notes receivable, sawmills, machinery, boats, lumber, timber and other movable property, his interest in commercial partnerships, especially the partnership of J. J. Burdin & Bro., and certain immovable property in the parish of Iberville, all of which property belonged to the marital community, and likewise of all revenues derived from the removal of timber from lands in the parishes of St. Martin, Iberia, and Iberville.

On defendant's exception of vagueness, plaintiff was ordered to amend her petition in respect to these allegations. In obedience

to the order of court, plaintiff filed a supplemental petition in which she set forth that she did not know what movable property and interest in commercial partnerships were taken possession of by defendant at the time of his wife's death, such information being particularly within defendant's knowledge, but that she is informed and believes that sums of money in excess of $50,000 were on deposit in various banks, some of which she mentions, "to the credit of defendant and to the credit of the commercial partnership of J. J. Burdin & Bro." This article of the supplemental petition also refers to accounts and notes and bank stock held by the defendant "to an amount unknown to petitioner, but well known to the defendant," and that all said property, including the four-fifths interest of the defendant in the commercial partnership of J. J. Burdin & Bro., belonged to the marital community formerly existing between defendant and his deceased wife, Elizabeth Franz.

The defendant also interposed an exception of vagueness to the supplemental petition, but the exception was not expressly passed on by the judge of the district court, who disposed of the case solely on the pleas of prescription filed by the defendant.

Plaintiff contends that the prescriptions successfully pleaded by the defendant to her various demands are not applicable, since no prescription other than that of thirty years can defeat her action. Plaintiff cites in support of her contention article 3548 of the Civil Code and the case of White v. White, 50 La. Ann. 104, 23 So. 95.

██ The prescription provided for in the cited codal article is against an action for the recovery of an *entire succession*.

In the case of White v. White, the facts are that the estate of the first wife was never opened. The husband on his remarriage used the movable effects of the first community for the benefit of the second community. After his death his succession was sued for these effects, which were set forth with particularity, by the heirs of his first wife. The suit was not against a usufructuary for an accounting, but was an action by the heirs for the recovery of the entire succession of their mother, which the court held was prescriptible by thirty years.

In the case now before us, plaintiff's action is not for the recovery of the entire succession of her deceased mother. Her suit is essentially for the annulment of the judicial proceedings whereby the succession was settled, with an incidental claim for an accounting for certain moneys and other movable effects, not specified, which she alleges were omitted from the settlement.

The basis of plaintiff's suit, apart from her attack on the judicial proceedings had in the succession of her mother, is set forth in paragraph XXI of her petition, as follows, viz.:

"That upon his remarriage the said John J. Burdin lost the usufruct of the property—of the community inherited by petitioner and by the other minor heirs, and that the said Burdin should account for and be condemned to pay the rents and revenues thereof, in so far as petitioner's interest is concerned, including the revenues derived from the removal of the timber from the lands described as belonging to the said estate, as well as the revenues derived from the removal of the timber from the lands situated in the Parish of Iberville and not included in said judgment of adjudication.

"That the said Burdin has never accounted to petitioner or any of the heirs of Elizabeth Franz for the cash, movables and other property which came into his hands after the

death of his said wife, as hereinabove set out, nor has he even made any account, except the provisional account hereinabove noticed, nor has he paid petitioner any of the price of the property adjudicated to him, and that he should strictly account for all such money and property which came in his hands."

Hence plaintiff's action, so far as it relates to the money and other movable effects alleged to have been omitted from the inventory in the succession of her mother and to the revenues from the immovable property, is one for the accounting of the usufruct which the defendant John J. Burdin enjoyed, under the law, of the share of his deceased wife in the community property.

The immovable property belonging to the partnership of John J. Burdin & Bro. was partitioned by licitation at the time of the settlement of the succession of Mrs. Elizabeth Franz Burdin in 1911. The interest of the plaintiff and her sisters and brother as the heirs of their deceased mother in the proceeds realized from this partition were fully accounted for by the defendant in the tutorship account which is herein referred to and attacked by the plaintiff. The only piece of real estate situated in Louisiana, in which the children of the deceased Mrs. Elizabeth Franz Burdin have an interest, is a certain piece of swamp land in the parish of Iberville, which apparently was not inventoried in Mrs. Burdin's succession. Plaintiff does not allege that the defendant has denied her proportionate interest in this particular land, which she is at liberty at any time to assert and liquidate by the proper proceeding.

Since the lands belonging to the partnership of John J. Burdin & Bro. were disposed of and the proceeds thereof accounted for to

plaintiff, her action for a settlement of her alleged rights in the partnership involve only the money and other movable property of the partnership, the usufruct whereof was enjoyed by the defendant as the surviving partner in community.

■■ The usufruct of the defendant of the movable effects of the marital community was not annulled or suspended by his omission to inventory such effects. Thomas v. Blair, 111 La. 685, 35 So. 811; Gryder v. Gryder, 37 La. Ann. 638; Succession of Viaud, 11 La. Ann. 297. And the usufruct so held by the defendant of the money and other movable effects was an imperfect or quasi usufruct, carrying with it the ownership and the right to dispose of the same, subject to an accounting at the expiration of the usufruct. Vivian State Bank v. Thomason-Lewis Lumber Co., 162 La. 660, 111 So. 51; Miguez v. Delcambre, 125 La. 194, 51 So. 108; Succession of Blancand, 48 La. Ann. 578, 19 So. 683; In re Tutorship of Minor Heirs of Jones, 41 La. Ann. 623, 6 So. 180; Gryder v. Gryder, 37 La. Ann. 638; Michel v. Knox, 34 La. Ann. 402.

■■ The usufruct of the community property held by the defendant terminated on July 18, 1911, the date of his second marriage; and from that date defendant became a debtor of his children for the money and movable effects theretofore held by him as usufructuary. Cochran v. Violet, 38 La. Ann. 525; In re Tutorship of Minor Heirs of Jones, 41 La. Ann. 623, 6 So. 180. Plaintiff's right for an accounting of the usufruct arose on September 26, 1912, the day she reached her majority. From that date the prescription of ten years against her demand for such an accounting began to run, and the prescription had actually accrued several years prior to the date she filed the present suit. Cochran v. Violet and In re Tutorship of Minor Heirs of Jones, referred to supra.

■ In addition to applying the prescription of ten years as a bar to plaintiff's demand for an accounting of the usufruct established by law in defendant's favor, the court below held that plaintiff's demand to annul the judgment of adjudication was prescribed by one year and at the most by ten years under Civ. Code, art. 3544, and Code Prac., art. 613. It may be that the proper prescription to apply to this demand is the prescription of five years under Civ. Code, art. 3542. But, be that as it may, it is plain that the demand is prescribed.

The court below also held that plaintiff's demand to set aside the order homologating the account of the tutorship was prescribed by four years and at the most by ten years, and that plaintiff's demand to set aside the order of court substituting the special mortgage for the general mortgage was prescribed by four years. We see no error in these rulings. In either case, the demands in question are prescribed. Civ. Code, arts. 362, 3544; Cochran v. Violet, 37 La. Ann. 221; Gallion v. Keegan, 39 La. Ann. 468, 2 So. 50.

■■ The court below further held that the prescription of one year was applicable to all plaintiff's claims for damages ex delicto; that the prescription of ten years was applicable to all personal claims asserted against defendant by plaintiff. These rulings appear to be correct.

■ Concerning plaintiff's alternative prayer for a judgment against defendant for $1,859.54, the amount of her interest in the succession of her mother as fixed by the account of her natural tutor, and for an accounting of moneys and other movable effects, the court below likewise held that the demands were barred by the prescription of four and ten years. The ruling is proper, unless, as plaintiff contends, the defendant has in writing renounced the prescription which had accrued. Plaintiff, in support of her contention, relies on a letter dated February 4, 1925, written by the defendant to plaintiff's husband, wherein the writer used the following language, viz.:

"Your note is not a matter that should worry you in any way whatever. When it is due, if you want it I will return it to you for renewal for another year, as it is, or simply let it run as it is. I have pledged behind it some stock which is good security, besides your note is A–I. Now just forget this matter or I can at any time you want send you the note marked paid, by having Hilda simply acknowledge receipt of $1,000, which I will have made by Mr. Voorhies to cancel that much against me as her lien on some property I own," etc.

Plaintiff contends that she never had a lien on any property of the defendant except the lien arising out of the succession of her mother, which was the lien referred to in defendant's letter to her husband. It is not necessary for us to decide whether an acknowledgment of a debt so as to renounce an acquired prescription can be made to a third person out of the presence of the creditor, because a mere acknowledgment is not sufficient for the purpose, even if accompanied by payment on account of the debt. There must be a new promise made to pay the debt in order to nullify an accrued prescription. Succession of Slaughter, 108 La. 492, 32 So. 379, 58 L. R. A. 408; Weil v. Jacobs, 111 La. 357, 35 So. 599; Manders v. Irwin, 118 La. 1048, 43 So. 698. See, also, Civ. Code, art. 2278, par. 4 (as amended by Act No. 121 of 1886, p. 219). A mere inspection of defendant's letter, the language of which we have hereinabove quoted, discloses that no promise whatever was made by the writer to pay the debt due plaintiff.

For the reasons assigned, the judgment appealed from is affirmed, at plaintiff's cost.