**Vicki MIKULECKY, Plaintiff–Appellant,**

v.

**MARRIOTT CORPORATION,
Defendant–Appellee.**

No. 87–3600.

United States Court of Appeals,
Fifth Circuit.

Sept. 9, 1988.

Dominick M. Saia, John M. Robin, Darryl J. Tschirn, Covington, La., for plaintiff-appellant.

Bruce J. Brumfield, Jr., Thomas M. Nosewicz, New Orleans, La., for defendant-appellee.

Before CLARK, Chief Circuit Judge, and RUBIN and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

This diversity-jurisdiction suit to recover damages for personal injuries was filed in Louisiana more than one year after the automobile accident on which it is based occurred in North Carolina. The defendant

conceded liability and sought to negotiate a settlement for an amount the plaintiff considered inadequate. The defendant also stipulated in a formal pretrial order that it was liable to the plaintiff for her injuries and contested only the amount of general damages due her, apparently not contesting reimbursement for her medical expenses. Thereafter, after the North Carolina statute of limitations had run, the defendant filed a motion to dismiss the suit because the one-year Louisiana prescriptive period had accrued before suit was filed, contending that the defendant's actions during the one-year period were not sufficient to constitute an interruption of prescription and its actions thereafter did not constitute a renunciation of prescription after the prescriptive period had run. The district court granted the motion and refused the plaintiff's request to transfer the case to North Carolina, whose statute of limitations is longer than Louisiana's. While we find that the settlement negotiations during the one-year period were insufficient to interrupt prescription, the defendant's actions after prescription had accrued, including its formal declarations to the court admitting liability for the accident, were sufficient to indicate an intent to renounce the benefit of prescription, and we therefore reverse the judgment of dismissal.

## I.

Vicki Mikulecky, a Louisiana resident employed as a flight attendant for Delta Air Lines, travelled to North Carolina on duty. Awaiting her return flight, she was a guest of a hotel owned by The Marriott Corporation. An hotel employee was driving her to the airport in a hotel van when she was injured in an accident on February 26, 1984. Her lawyer wrote to the adjuster for Marriott's insurer on April 18, 1984, stating that he represented Mikulecky. He again wrote on June 29, sending copies of medical reports. On July 10, the adjuster sent the lawyer a letter acknowledging receipt of the reports and stating that he did not have medical reports from the North Carolina hospital where Mikulecky had been treated immediately after the accident.

There is no evidence of further communication between Marriott's adjuster and the lawyer until April 24, 1985, more than one year after the accident, when the adjuster wrote the lawyer asking for documentation of Mikulecky's expenses so that the claim could be evaluated and an offer of settlement "attempted." Thereafter, Mikulecky retained a new lawyer who wrote to the adjuster on May 16, stating that he now represented Mikulecky. He enclosed a number of documents, including medical bills, to support her claim, and discussed the possibility of attempting to settle the claim without suit. The letter also stated that he had spoken to another lawyer handling other cases arising from the same accident and had been informed that the parties had agreed to stipulate liability. On June 5, the adjuster responded with an offer to settle the claim for $1,000.

Mikulecky's new lawyer, her second, then filed suit in federal district court for the Eastern District of Louisiana on February 25, 1986, which was almost two years after the accident. Marriott answered on July 11, 1986, denying liability and pleading prescription as its fourth defense. On July 11, counsel for Marriott wrote to Mikulecky's lawyer seeking a formal request for settlement and stating that he needed Mikulecky's medical bills before presenting her lawyer's offer of settlement to his client. On November 10, 1986, Marriott's lawyer sent Mikulecky's lawyer an offer of $4,000 to settle her claims. On December 1, Marriott's lawyer wrote Mikulecky's lawyer a letter in which he asked for a response to his settlement offer, failing which he would set the matter for trial. On December 11, 1986, Marriott's lawyer increased the offer to $6,000.

On December 10, the district court held a pretrial conference. A formal pretrial order was entered, signed by counsel for both parties and the trial judge. The order states, in part, "Defendants stipulate that $10,000.00 may be involved in this claim and that jurisdiction of this Court is admitted.... Defendants do not contest the

happening of the accident and will admit liability at trial. The extent of injuries of the plaintiff is contested." Prescription was not pleaded. The court scheduled a non-jury trial that was initially set for March 1987 and later postponed. The district court instructed each party to file a brief memorandum "concisely stating their contentions of fact and law in separately numbered paragraphs." In response to this order, Marriott filed a pretrial memorandum stating, "The Marriott Corporation has stipulated that their employee was at fault and that such fault caused the accident in question. Thus, the only issue before this Honorable Court is the quantum worth of plaintiff's alleged injuries." Marriott's memorandum also reviewed awards in allegedly similar cases and concluded that the award should be in the range of $3,000 to $5,000, but "should this Honorable Court feel that the plaintiff is entitled to a larger award, the $7,000.00 figure decided on in [a cited Louisiana case] is the highest general damage figure which this Court could reasonably award. . . ." In June 1987, Mikulecky discharged the second lawyer and retained her third and present attorney. A month later, on July 10, Marriott moved to dismiss the suit on the ground that the one-year Louisiana prescriptive period for tort actions, set forth in Civil Code Article 3492, barred her action.

Mikulecky contended that the claim was still alive either because the North Carolina three-year statute of limitations applied; or because, if the Louisiana one-year period applied, Marriott had acknowledged the debt, thus interrupting prescription; or because, after prescription had run, Marriott had renounced it; or because Marriott had waived the plea. Because of the conclusion we reach, we discuss only the issues of interruption and renunciation of prescription.

## II.

■ Louisiana law permits interruption of a prescriptive period that has begun to accrue, but has not yet run.[1] "If prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption."[2] "Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe."[3]

■ This acknowledgment may be express or tacit,[4] but it must amount to an admission of the creditor's right. In *Flowers v. United States Fidelity & Guaranty Co.*, the Louisiana Supreme Court held that neither an insurance company's acknowledgement of a husband's right to reimbursement of his wife's medical expenses for injuries suffered in an accident nor the company's offer to negotiate a settlement of the wife's personal injury claim was sufficient to interrupt prescription of the wife's claim for personal injuries.[5]

■ Interruption could have occurred only in the one year from February 26, 1984 to February 26, 1985. None of the correspondence between Marriott and Mikulecky's lawyers during that period constitutes an acknowledgment by Marriott of Mikulecky's right to recover from it or any intention to interrupt prescription. At most, it seeks to elicit information about the extent of her injuries and to negotiate settlement of her claim. A party might wish to compromise a claim while preserving the defense of prescription because it is uncertain that the defense will be upheld. Or it might be willing to pay a modest amount to terminate litigation or to satisfy some feeling of natural obligation. To hold

1. *See* La.Civ.Code Ann. art. 3449 comment c (West Supp.1988).

2. *Id.* art. 3466 (West Supp.1988).

3. *Id.* art. 3464 (West Supp.1988).

4. *Flowers v. United States Fidelity & Guar. Co.*, 381 So.2d 378, 382 (La.1980).

5. *Id.* at 381; *see also Frederick v. Aetna Life & Casualty Co.*, 467 So.2d 600, 602 (La.Ct.App. 1985); *White v. Miller*, 447 So.2d 1192, 1194–95 (La.Ct.App.), *writ denied*, 449 So.2d 1357 (1984); *Trainer v. Aycock Welding Co.*, 421 So.2d 416, 417–18 (La.Ct.App.1982).

settlement negotiations that do not result in an actual compromise sufficient to constitute an acknowledgment interrupting prescription would undoubtedly stifle negotiations. Courts, like litigants, recognize that compromise should be encouraged, for even the proverbial bad settlement may be better for the parties than the putative good law suit. The Louisiana decisions recognize, therefore, that a settlement offer is not sufficient to acknowledge a debt, hence to interrupt prescription.

## III.

 Even after prescription has accrued, the creditor may renounce the benefit of that defense,[6] expressly or tacitly.[7] "Tacit renunciation arises from circumstances that give rise to a presumption that the advantages of prescription have been abandoned."[8] As the comments to the 1982 revision of Louisiana Civil Code article 3449 note, "*Renunciation* of prescription is a technical term designating the abandonment of rights derived from an accrual of prescription."[9] Prescription is an affirmative defense, which must be pleaded,[10] but once the defense is raised, the debtor bears the burden of establishing renunciation.[11]

 Louisiana jurisprudence has consistently held that renunciation will not be found unless the creditor's intention to renounce is "clear, direct and absolute and manifested by words or actions of the party in whose favor prescription has run."[12] The acknowledgment that a debt exists is not sufficient to renounce an accrued prescription, even if accompanied by payment on account of the debt.[13] When the debt is based on a promise to pay, "[t]here must be a new promise made to pay the debt in order to nullify an accrued prescription."[14]

A host of Louisiana cases decided over a period of more than a century have considered what is and what is not sufficient to constitute interruption or renunciation. The two doctrines are different, and the unequivocal acknowledgment of a debt or a payment on it suffices for an interruption of prescription, but not for renunciation. Each of the doctrines is, however, based on the thesis that whether a creditor has forfeited the benefit of prescription that has either begun to accrue or run completely turns on that creditor's intention.

The leading Louisiana case on interruption of prescription is *Flowers v. United States Fidelity & Guaranty Co.*[15] The Louisiana Supreme Court there held that a debtor's actions may tacitly interrupt liberative prescription of an action for delictual damages. Since delictual liability is not based on a promise to pay, it follows that an interruption need not consist of a "new promise." The same rule should be applicable to renunciation. Because renunciation may be tacit as well as express, a creditor may renounce prescription of a delictual action without making an explicit promise to pay the unliquidated sum claimed. If however, the creditor explicitly promises to the pay the debt, knowing that prescription has accrued, the promise should evidence the promisor's intention to renounce that defense.

---

**6.** La.Civ.Code Ann. art. 3449 (West.Supp.1988). *See, e.g., McPherson v. Roy,* 390 So.2d 543, 551 (La.Ct.App.1980), *writ denied,* 396 So.2d 910 (1981); *Corsey v. State, Through Dept. of Corrections,* 366 So.2d 964, 967 (La.Ct.App.), *rev'd on other grounds,* 375 So.2d 1319 (La.1979).

**7.** La.Civ.Code Ann. art. 3450 (West Supp.1988).

**8.** *Id.*

**9.** *Id.* art. 3449 comment c (West Supp.1988) (emphasis in original).

**10.** *Id.* art. 3452 (West Supp.1988).

**11.** *Corsey,* 366 So.2d at 967; *Hunter v. Sisters of Charity of Incarnate Word,* 236 So.2d 565 (La.Ct.

App.1970); *Ivey v. Joyce,* 195 So. 33 (La.Ct.App. 1940).

**12.** *Bordelon's, Inc. v. Littell,* 490 So.2d 779, 781 (La.Ct.App.1986); *see also Ivey v. Joyce,* 195 So. at 35.

**13.** *Bordelon's, Inc.,* 490 So.2d at 781.

**14.** *Burdin v. Burdin,* 171 La. 7, 129 So. 651, 655 (1930), *quoted with approval in Torrey v. Simon–Torrey, Inc.,* 284 So.2d 130, 135 (La.Ct.App. 1973); *see also Succession of Aurianne,* 219 La. 701, 853 So.2d 901, 903 (1951).

**15.** 381 So.2d 378 (La.1980).

In *Flowers,* the insurer had paid part of a claim for medical expenses, but the total amount of that claim had not been fixed. The Court held that "a debtor may acknowledge a debt without knowing the exact amount due," [16] and that the partial payment to the husband evidenced the insurer's intention to acknowledge its indebtedness for all of these expenses. [17] While partial payment would not constitute a renunciation, it follows that, if prescription on a delictual action can be renounced, it is not necessary that the total amount due be determined before the renunciation is effective. The *Flowers* opinion quoted with approval and emphasized this excerpt regarding interruption from Aubry and Rau's classic French commentary:

> "The same [tacit acknowledgment] would be true of an offer to pay the damages caused by a tort, made by the defendant in the course of the trial, or of an actual act of reparation or indemnity." [18]

 Because a mere acknowledgment during suit would not suffice for a renunciation after prescription had accrued, Marriott's various offers to settle the claim were not sufficient to constitute renunciation. Marriott, however, did more than acknowledge a debt or attempt a compromise. After having pleaded prescription in its answer, it stated in a formal pretrial order, and later repeated, a juridical admission of liability.

Article 1853 of the Louisiana Civil Code states:

> A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.

A judicial confession is indivisible and it may be revoked only on the ground of error of fact.

A judicial confession is a party's express acknowledgment of the correctness of the fact charged against him by his adversary, and has the effect of waiving evidence as to the subject of the admission. [19]

Mariott's judicial confession is not therefore to be taken lightly or allowed to be later revoked. It was not an effort to compromise, but an admission of obligation and a formal commitment to pay whatever was found due, although that amount had not yet been established. A formal acknowledgment of the binding effect of a debt, made after prescription has run by making provision for its payment, "is certainly a tacit renunciation of prescription," the Louisiana Supreme Court held more than a century ago. [20]

Had Marriott not conceded liability, Mikulecky might have timely filed suit in North Carolina. When counsel for Marriott's insurer, who was of course acting for Marriott, signed the pretrial order and filed the pretrial memorandum, he acted in response to what Louisiana law considers a "natural obligation" which arises, for example, "[w]hen a civil obligation has been extinguished by prescription." [21] Such a natural obligation "arises from circumstances in which the law implies a particular moral duty to render a performance." [22] This natural obligation did not suffice to bar prescription, [23] but it did constitute an adequate consideration, or, in civilian terms, *cause* for renunciation.

Many Louisiana cases have discussed the nature of the extrajudicial acts that suffice for a renunciation. [24] None has been cited

16. *Id.* at 380.

17. *Id.*

18. 2 Civil Law Translations, Aubry & Rau, Property, § 215, No. 304, p. 344 (1946).

19. *First Homestead Fed. Sav. & Loan v. Coleman,* 446 So.2d 551, 553 (La.Ct.App.1984).

20. *Succession of Ferguson,* 17 La.Ann. 255 (1865).

21. La.Civil Code Ann. art. 1762 (West Supp. 1988).

22. *Id.* art. 1760 (West Supp.1988).

23. *Id.* art. 1761 (West Supp.1988).

24. *See, e.g., Succession of Aurianne,* 219 La. 701, 53 So.2d 901 (La.1951); *Landry v. Guidry,* 210 La. 194, 26 So.2d 695 (La.1946); *Burdin v. Burdin,* 171 La. 7, 129 So. 651 (1930); *Succession of Slaughter,* 108 La. 492, 32 So. 379 (1902); *Frellsen & Stevenson v. Gantt,* 25 La.Ann. 476 (1873); *Succession of Ferguson,* 17 La.Ann. 255 (1865); *Courtebray v. Rils,* 9 Rob. 511 (La.1845); *Bordelons, Inc. v. Littell,* 490 So.2d 779 (La.Ct.App. 1986); *Boudreaux v. Trapp,* 420 So.2d 1012 (La.

to us, and we have found none, in which a judicial confession of liability was considered. The nature of that act, which has a particular sanctity in Louisiana law, suffices to mark a distinction from an informal acknowledgment or an offer to compromise. Marriott's judicial confession, which may not be revoked, was in response to a natural obligation arising from a moral duty. A hundred and thirty years ago, the Louisiana Supreme Court observed:

> it has been urged that inasmuch as a corporation has no soul, it cannot plead prescription. This would be a better reason for holding that it can.[25]

Marriott's actions may have evidenced that this corporation or its insurer had soul sufficient to acknowledge its natural obligation and renounce the defense that it might have offered. Whether or not it acted from such commendable motives, Louisiana courts would not permit Marriott now to escape its unequivocal recognition of its moral obligation. Nor, therefore, may we.

For these reasons, we REVERSE the judgment dismissing the suit and REMAND the case for further proceedings.

Ct.App.1982); *McPherson v. Roy,* 390 So.2d 543 (La.Ct.App.1980), *writ denied,* 396 So.2d 910 (1981); *Corsey v. State, Through Dept. of Corrections,* 366 So.2d 964 (La.Ct.App.1978); *Harmon v. Harmon,* 308 So.2d 524 (La.Ct.App.1975); *Succession of DeGrange,* 198 So. 784 (La.Ct.App.

1940); *Glass v. Holomon,* 197 So. 438 (La.Ct.App.1940); *Ivey v. Joyce,* 195 So. 33 (La.Ct.App.1940).

25. *New Orleans & C. R.R. v. Harper,* 11 La.Ann. 212 (1856).